# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Christopher Corcoran, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CVS Pharmacy, Inc.<br><br>Defendant. | Case No. 15-cv-03504-YGR<br><br>CLASS ACTION<br><br>DECLARATION OF MICHAEL D. REICHARDT<br><br>**UNDREDACTED VERSION OF DOCUMENT -<br>TO BE FILED UNDER SEAL (L.R. 79-5(d)(1)(D))** |

I, Michael D. Reichardt, pursuant to 28 U.S.C. § 1746, hereby affirm that I am over 18 years of age and competent to make the following Declaration.

**My Background**

1. I am currently the Senior Director, Network Relations for OptumRx, Inc. ("Optum"). I have held this position since January 2015 when I was hired by Catamaran, LLC, a company that was subsequently acquired by Optum. As Senior Director, my primary responsibilities involve negotiating contracts and managing relationships with Optum's network pharmacies, including CVS. Over the course of my career, I have negotiated approximately 80 contracts with network pharmacies. My other responsibilities include managing staff and reviewing the pharmacy manual that applies to network pharmacies.

2. Optum is a pharmacy benefit manager ("PBM"). Following its recent acquisition of Catamaran Corporation, Optum is now one of the three largest PBMs in the United States, with Express Scripts and Caremark being the other two.

**CVS's Health Savings Pass Program**

1

3. I am aware that, until early in 2016, CVS retail pharmacies offered a membership-based program called Health Savings Pass ("HSP"), which provided enrollees a 90-day supply of a set list of generic drugs at a set price point.

4. I understand that Health Savings Pass was structured as a membership program. In order to access the HSP program pricing, CVS required customers to complete an enrollment form, agree to the program's terms and conditions, and pay an annual enrollment fee.

5. I am aware that CVS did not submit its HSP price as its usual and customary ("U&C") price on claims adjudicated by Optum or its predecessors at any point during the duration of the program.

### The Definitions of "Usual and Customary"

6. I understand that from June 1, 1999 through January 28, 2015, the relationship between Optum and CVS retail pharmacies was governed by the Prescription Drug Services Agreement between CVS and Optum's predecessor company, Pacificare Pharmacy Centers, Inc. (d/b/a Prescription Solutions) (the "Predecessor Agreement").

7. The Predecessor Agreement defined "Usual and Customary" to mean "the price that the Company Pharmacy would have charged the Member for the Prescription if the Member was a cash customer. This includes all applicable discounts including, but not limited to: Senior citizen discounts, frequent shopper and special customer discounts, or other discounts." Predecessor Agreement at 12.

8. CVS and Optum executed a new Pharmacy Network Agreement that went into effect on January 29, 2015 (the "Agreement"). The Agreement was finalized and signed by Carrie Tichey, Senior Vice President Network Relations for Optum.

9. The Agreement defines "Usual and Customary Charge" to mean "the price that a cash paying customer pays [Optum] for same Drug Products, devices, products and/or supplies and same amount on date of service excluding any coupons or discount card programs." Agreement § 1.41.

10. Optum understands the exclusion of "discount card programs" from the definition of "Usual and Customary Charge" to apply to CVS's Health Savings Pass program. The definition of "Usual and Customary Charge" in the Agreement memorialized both parties' prior understanding that CVS was not required to submit its Health Savings Pass price as its usual and customary ("U&C") price on claims submitted to Optum under the Predecessor Agreement.

11. Based on my understanding of the business practices at Optum and Prescription Solutions, neither company interpreted the Predecessor Agreement's definition of "Usual and Customary" to require CVS to submit its Health Savings Pass price as its U&C price.

CONFIDENTIAL                                                                                           CVSSM-0001362

Optum did not consider HSP members, who had affirmatively enrolled in a program, to be "cash customers." Similarly, they did not interpret the Predecessor Agreement's phrase "applicable discounts" to encompass the Health Savings Pass.

12. I understand that Optum and Prescription Solutions took a consistent position with respect to membership-based generic programs offered by pharmacies other than CVS. If a pharmacy required a customer to enroll in a program in order to access the membership program's prices, then neither Optum nor Prescription Solutions required the pharmacy to submit the program's prices as U&C.

Dated: November 20, 2016

_____
Michael D. Reichardt
OptumRx
Senior Director, Network Relations

3

CONFIDENTIAL                                                                                                    CVSSM-0001363