# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Christopher Corcoran, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CVS Pharmacy, Inc.<br><br>Defendant. | Case No. 15-cv-03504-YGR<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF FRANCEEN SPADACCINO, RPh.** |

I, Franceen Spadaccino, pursuant to 28 U.S.C. § 1746, hereby affirm that I am over 18 years of age and competent to make the following Declaration.

### Professional Background

1. I worked at Medco from 1998–2013. From 2006 through 2013, I was Senior Director, Provider Relations and Network Strategy for Medco Health Solutions, Inc. ("Medco"), which became a wholly-owned subsidiary of Express Scripts Holding Company in 2012. As Senior Director, my job responsibilities included: negotiating contracts with network pharmacies, provider relations and network strategy.

2. Since 2014, I have been Assistant Vice President, Government Relations for Fidelis Care.

3. I graduated from St. John's University College of Pharmacy and have been a licensed pharmacist in New York since October 2, 1981.

### Medco's Definition of "Usual and Customary"

4. Medco's 2009 Pharmacy Services Manual, finalized in or around November 2008, defined the U&C price as:

   > The lowest net price a cash patient or customer would have paid the day the prescription was dispensed, inclusive of all applicable discounts. These discounts include, but are not limited to, senior citizen discounts, "loss leaders" frequent shopper or special customer discounts, competitor's matched price, and other discounts offered to customers, including but not limited to buyer's clubs with nominal membership fees, discount buying cards and programs.

   2009 Pharmacy Services Manual § 8.9.

5. In the next edition of the Manual, Medco revised its definition of U&C to mean "the lowest net cash price a cash patient or customer would have paid the day the prescription was dispensed, inclusive of all applicable discounts." 2009/2010 Pharmacy Services Manual § 3.3.1.

### Medco's Position on Membership-Based Generic Programs

6. I recall discussing membership-based generic programs with a number of my colleagues, including, at a minimum, Bill Strein, Laizer Kornwasser, Calvin Corum, and in-house counsel at Medco. We decided that pharmacies who charged customers a fee to enroll in a membership-based generic program were not required to submit the program price as U&C, and subsequently modified the U&C definition in Medco's next provider manual. I believe my colleagues and I discussed Medco's position with most of the pharmacies that offered membership-based generic programs.

7. I understood the membership fee to be the key factor differentiating (i) a membership-based generic program, which did not affect a pharmacy's U&C price, from (ii) a mere discounted price list like Walmart's $4 generic offering, which pricing was charged to all customers and which Medco required the pharmacy to submit as U&C. A membership fee poses a real barrier to entry for customers who might consider joining the program, especially when other pharmacies (like Walmart) offered the same medications, at a similar price point, without a fee.

8. Medco did not simply rely on pharmacies' representations that they required customers to pay an enrollment fee to access their membership program pricing. I recall that Medco sent "secret shoppers" to some retail chains to confirm that a customer would not get the benefit of the membership program pricing unless he or she signed up for the program and paid the fee.

9. As it read in Medco's 2009 Manual, the definition of "Usual and Customary" included programs that charged no fee or a "nominal" fee. Medco did not have a standard definition of "nominal" because one's definition of "nominal" could vary based on a number of factors, including where one lives, one's income bracket, etc.

10. As noted above, Medco ultimately removed the reference to "nominal" fees from its next edition of the Manual — the 2009/2010 Manual. The new definition contained the language "inclusive of all applicable discounts;" this language, too, did not encompass membership programs, because membership program prices were only "applicable" to customers who had paid a fee to join the program (and performed any other requirements for enrolling). The regular customer paying the retail price (i.e., the cash customer) who did not join the program was not entitled to the same pricing structure of the membership program.

11. Although I was not personally involved in pharmacy audits, I recall that Medco's team audited the U&C prices being submitted by pharmacies to ensure that Medco's clients were getting the benefit of discounted pricing that pharmacies offered to all customers. I am not aware of Medco ever taking action against a pharmacy for not submitting its membership program prices as its U&C prices.

Date: November 18, 2016

Franceen Spadaccino, RPh.

CVSSM-0001367