# Exhibit E

August 17, 2016

*Via Hand Delivery & ECF Filing*

Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *Corcoran, et al. v. CVS Pharmacy, Inc.*, No. 15-cv-03504-YGR:
      **Discovery Dispute Letter Brief**

Dear Judge Corley:

The parties submit this joint letter brief regarding a discovery dispute in the above-referenced matter that remains unresolved. The parties have met and conferred on August 8, 2016, by telephone, and on August 11, 2016, in person, in San Francisco.

**Defendant's Position**

The issue before the Court is whether CVS Pharmacy, Inc. ("CVS") should be required to produce transaction data associated with purchases of drugs on the Health Savings Pass ("HSP") formulary in any state *other than* the jurisdictions represented by the current named plaintiffs (hereinafter "Nationwide Data") in light of Judge Gonzalez Rogers's Order on CVS's motion to dismiss the Third Amended Complaint (July 29, 2016) [Dkt. No. 130] ("Order").[1] In the Order, Judge Gonzalez Rogers dismissed Plaintiffs' claims that invoke the laws of jurisdictions where no Plaintiff resides or claims to have been injured; that Order forecloses Plaintiffs from pursuing a nationwide class. Order at 4 ("Plaintiffs do not have standing to bring the common law claims under the laws of the thirty-eight states to which they have alleged no connection."). Thus, there is no longer any basis for CVS to produce Nationwide Data as contemplated by the Court's Order granting the parties' Stipulation Regarding Defendant CVS Pharmacy, Inc.'s Production of Nationwide Transaction Data (June 29, 2016) [Dkt. No. 122] ("Stipulation"). Plaintiffs, however, continue to demand that CVS produce data about transactions now totally unrelated to their clients or to the putative state subclasses. Accordingly, CVS requests that the Court relieve CVS of the obligation to produce Nationwide Data, currently due for production on August 26, 2016.

The Court heard the parties' dispute regarding Nationwide Data, briefed in a joint Discovery Dispute Letter Brief ("Letter Brief") (June 14, 2016) [Dkt. No. 108], at a hearing on June 22, 2016. By the time of that hearing, CVS had already produced all transaction data for HSP-eligible drugs in the 13 jurisdictions in which at least one Plaintiff resides or claims to have been injured. Letter Brief at 3. CVS's argued that it should not be required to produce additional

---

[1] Plaintiffs have now advised CVS that the only Plaintiff representative from the District of Columbia and Maryland is withdrawing from the case; therefore, only 11 states are now at issue.

data—Nationwide Data—because "*[i]f CVS's motion [to dismiss] is granted*, Plaintiffs will have no claims from purchases occurring at CVS pharmacies in states other than the Thirteen States." *Id* (emphasis added). The Court found that if the motion to dismiss were denied, then the Nationwide Data would have to be produced, but "[i]f it is granted, then [Plaintiffs would] have to come back and tell me why it should be produced." June 22, 2016 Hr'g Tr. at 18:19–20 [Dkt. No. 133]. The Court also said it would "make[] sense to wait and see" how the motion to dismiss was resolved. *Id*. at 21:12–13. But because Plaintiffs had an August deadline to move for class certification, the Court gave CVS the option either to (1) produce the Nationwide Data forthwith or (2) suspend all deadlines until the motion to dismiss was decided. *Id*. at 18:22–19:18. Neither side wanted to suspend all deadlines indefinitely, so the parties agreed that CVS would produce data by August 26 and Plaintiffs would file their motion by October 3. Stipulation at 3.

Judge Gonzalez Rogers's ruling three weeks ago has removed the legal grounding for production of the Nationwide Data. With no nationwide claims now pending, CVS should not be required to produce Nationwide Data on August 26 for three reasons: (1) Nationwide Data are not relevant to class certification or to the merits; (2) producing the data is costly; and (3) CVS will agree to make additional data available to Plaintiffs should they seek leave to amend to add additional states.

***First***, the Nationwide Data are no longer relevant information. There is no longer a putative nationwide class, so data from jurisdictions where no Plaintiff resides or claims to have been injured is not relevant to class certification. Plaintiffs already have data from 13 jurisdictions to determine alleged damages and the usual and customary ("U&C") prices communicated to potential class members' third-party payors and/or PBMs. Plaintiffs argue the Nationwide Data "will bear on the uniformity of CVS's claims adjudication process, the prevalence of the HSP price among the prices CVS charges cash-paying customers, and the uniformity of CVS's obligation and practice not to charge copayments that exceed the purported U&C price it reports to pharmacy benefit managers and insurers." But these arguments assume without basis that CVS's practices in states not at issue in this litigation are relevant; after Judge Gonzalez Rogers's ruling, they are not. The fact that the HSP program was available in 38 (now 39) states where Plaintiffs have no claims is immaterial, as Plaintiffs need not establish commonality in those 38 (now 39) states to prove their claims. While the HSP program was not "confined to certain states or regions," Plaintiffs' claims are so confined. Nor are the Nationwide Data relevant to "CVS's awareness of culpability and motives for engaging in wrongful conduct." *See infra.* It is undisputed that ***CVS did not report*** its HSP price as its U&C price anywhere in the country, and ***knew it did not so report***. Nationwide Data are not necessary to establish that fact.[2]

---

[2] Plaintiffs argue that CVS's other production, which was not "limited to certain geographic areas," somehow precludes CVS from limiting transaction data to the relevant regions. This argument makes no sense. CVS's other production was made before the Order at issue and, in any case, consists in large part of emails and other documents that cannot be easily segregated based on geography. That CVS made a robust production of other documents to Plaintiffs obviously provides no grounds for Plaintiffs to insist that CVS produce additional and demonstrably irrelevant data.

2

Finally, Plaintiffs profess concern that CVS will make "arguments against Plaintiffs' case that would be foreclosed or rebutted by the Nationwide Data." Plaintiffs do not identify any concrete example to support this speculation, and CVS does not understand the basis of Plaintiffs' conjecture. In any event, the remedy is not to order production of massive immaterial data based on undeveloped hypotheticals; instead, if a concrete issue arises—and CVS does not know what that issue could be—Plaintiffs' remedy would be to meet and confer with CVS at that time and, failing agreement, seek relief from the Court. Furthermore, insofar as Plaintiffs claim the Nationwide Data will assist them in determining whether pursuing state classes is financially advantageous, that is immaterial. The Federal Rules do not allow discovery to serve as a fishing expedition to expand a putative class. Fed. R. Civ. P. 26(b)(1) ("[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). It also overlooks that Plaintiffs attempted to plead a putative nationwide class *before* they had any data. Although Plaintiffs take umbrage at CVS's use of the term "fishing expedition," that is what it is; indeed, Plaintiffs have not identified any new potential class representative in discussions with CVS. At the August 11, 2016, hearing, Plaintiffs' counsel commented that the Nationwide Data would answer the question of "how prevalent was this [alleged] overcharging" across the states in order to determine in which states to seek to certify classes. Aug. 11, 2016 Hr'g Tr. at 34:22–23 [Dkt. No. 147]. The Court rightly commented, "I actually don't think you get discovery for that reason. I think that's what you determine before you file the lawsuit." *Id.* at 35:7–9.

***Second***, given that Plaintiffs no longer have pending nationwide claims, CVS is incurring unnecessary costs for each day that passes and CVS is not relieved of the August 26 deadline. CVS is incurring approximately $5,500 each day in vendor-processing costs in order to ready the Nationwide Data for production by August 26. Because the data are no longer relevant, that cost is now avoidable.

***Third***, the Court may relieve CVS of producing Nationwide Data now without risking a time-crunch for Plaintiffs should Plaintiffs seek leave to amend to add class representatives for new states. The company has extracted the Nationwide Data from its Data Warehouse and provided those data to its outside vendor; thus, the most time-intensive step in the process is complete. If Plaintiffs move to amend their pleading (for a fourth time) to add representatives from new states, CVS agrees promptly to produce data from the new state(s)—*e.g.*, within 5 business days of Plaintiffs filing their motion—and not await a decision on the request for leave before producing the (potentially) relevant data.[3] Thus, not only is there no ***legal basis*** that Nationwide Data are discoverable any longer, but there also is no ***practical reason*** to compel their production to avoid a potential timing issue should the data become relevant at a later date.[4] Plaintiffs unfairly suggest that they "are uneasy in relying on CVS's assurance that it promptly will produce transaction data" simply because CVS contends that a changed circumstance—the Order—renders production of the Nationwide Data unnecessary. Any issue with the timeliness of

---

[3] CVS makes this offer without prejudice to its right to oppose leave to amend.

[4] Last week, Plaintiffs twice advised CVS that they do not yet have additional class representatives to add to the case.

3

CVS's production (should it be necessary in the future) obviously could be addressed by the Court in the unlikely event an issue arises.

For these reasons, CVS respectfully requests that it be relieved of any obligation to produce Nationwide Data. The parties are continuing to discuss a possible stipulation that would moot this motion; as of this filing, however, the parties have not been able to resolve the issue and, thus, CVS seeks the Court's assistance. *See* Exhibit A.

### **Plaintiffs' Position**

CVS should produce the remaining transaction data, which it has prepared and has stated will be ready to produce on August 26. It offers no persuasive reason why it should be relieved of an obligation it undertook pursuant to a Stipulation and Court Order. Indeed, at the August 11, 2016 discovery, this Court emphatically rejected the same burden/cost argument that CVS repeats here. And for good reason: at the June 22, 2016 hearing, the Court gave CVS the choice to defer a ruling on whether or not it needed to produce nationwide data until after the Court ruled on CVS's pending dismissal motion. CVS decided instead to enter into a stipulation with Plaintiffs on an agreed-upon schedule for producing the Nationwide Data, as well as on modification of the case schedule to reflect that agreement. Given that choice, CVS cannot now be heard to complain about costs it chose to incur based on an agreement it struck with Plaintiffs – one that it now seeks to renege upon.

Thus, the only argument that CVS is left to make is that somehow the Nationwide Data is not relevant for the case, either for class certification or on the merits. But CVS's arguments on this score fail as well. As Plaintiffs have argued both in the parties' discovery meet and confer process, as well as through our arguments to the Court, the Nationwide Data is highly relevant not only for class certification, but for the merits of the case as well.

*First,* **CVS's wrongful conduct that Plaintiffs challenge is nationwide in scope, and therefore the Nationwide Data is probative evidence for Plaintiffs' claims.** It bears emphasis that all of the activities that are at the center of this case involve what Plaintiffs allege are common and uniform practices nationwide, rather than conduct that is confined to certain states or regions. The HSP program itself – a program which yields CVS's true usual and customary price, but which CVS wrongfully disregards in reporting much higher U&C prices – is nationwide, as is CVS's methodology for calculating its inflated U&C prices, and the process by which it submits prescription drug purchase claims for reimbursement by insurers. CVS asserts that Plaintiffs "assume without basis that CVS's practices in states not at issue in this litigation are relevant," *see supra*, but that misses the point. CVS's conduct is national in scope, and thus the proper scope for data is national as well, regardless of where the individual named Plaintiffs reside or which states' laws they are asserting.[5] Nowhere in the Court's order on CVS's motion to dismiss the Third Amended Complaint did the Court rule that discovery should be limited to certain states, and

---

[5] It bears mention that CVS's production of documents other than transaction data has not been limited to certain geographic areas. Thus, CVS's attempt to chop up and produce only part of its transaction data is inconsistent not just with the geographic scope of CVS's acts and practices, but also the concomitant scope of the rest of the discovery in this case.

4

CVS's suggestion otherwise simply is without any basis. Accordingly, Nationwide Data is relevant evidence for the case and should be produced. The Nationwide Data will bear on the uniformity of CVS's claims adjudication process, the prevalence of the HSP price among the prices CVS charges cash-paying customers, and the uniformity of CVS's obligation and practice not to charge copayments that exceed the purported U&C price it reports to pharmacy benefit managers and insurers. All of these factors are of prime significance for class certification's commonality and predominance requirements, not to mention for proving the underlying merits of Plaintiffs' and the class(es)' claims against CVS. What is more, Plaintiffs are entitled to understand the full impact of CVS's wrongful overcharging conduct and the impact it had on CVS's bottom line, as that bears on CVS's awareness of culpability and motives for engaging in wrongful conduct. These considerations are relevant both for Plaintiffs' intent-based causes of action as well as the claims for punitive damages claims that CVS faces. Finally, in addition to Plaintiffs's entitlement to the nationwide data as support for their claims, Plaintiffs submit that they are entitled to that data to protect against CVS's arguments and defenses. CVS should not be allowed to make arguments about the non-produced data's bearing on either class certification or the merits, either explicitly or indirectly (*e.g.*, by making arguments that rely on the absence of the non-produced data). In discussing resolving this dispute with CVS through a potential stipulation, Plaintiffs requested that CVS agree that it would make no such arguments. CVS would not agree to a stipulation, and Plaintiffs believe that it is because CVS has every intention of making arguments against Plaintiffs' case that would be foreclosed or rebutted by the Nationwide Data. Notably, CVS's arguments above do not meaningfully address these points, let alone rebut them.

*Second,* **neither procedural efficiency nor fairness would be served by CVS once again avoiding producing all of the data relevant to this case.** The Court's order on the dismissal motion was without prejudice to Plaintiffs amending their complaint to add additional class representatives for new state subclasses. Plaintiffs in fact are in the process of evaluating whether and to what extent to do just that. The transaction data for states other than the thirteen for which Plaintiffs have received data obviously will be highly relevant and important information in this regard. Plaintiffs and class counsel have a right to know the scope and extent of CVS's wrongful conduct on a state-by-state basis and to make decisions regarding adding state subclasses informed by this information. CVS makes the wholly meritless accusation that Plaintiffs are engaging in a fishing expedition, ignoring that the Court has upheld as plausible and actionable Plaintiffs' factual allegations and causes of action. The case is far past CVS questioning the threshold viability of Plaintiffs' claims, as any reasonable reading of the Court's orders confirms.

Furthermore, Plaintiffs justifiably are uneasy in relying on CVS's assurance that it promptly will produce transaction data covering an expanded geographic scope for which Plaintiffs seek leave to amend, even if CVS opposes the amendment. After all, CVS already promised that it would produce such data before, but then went back on its promise. In order to avoid what could very well be yet another fight about this same data down the road, Plaintiffs submit that the most efficient and fair course is simply for the parties to continue on the one they had agreed upon before CVS's latest backtracking.

For all of these reasons, CVS should produce the Nationwide Data on August 26 as it had agreed to – and had been ordered to.

By: */s/ Robert B. Gilmore*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Rebecca R. Anzidei (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
STEIN MITCHELL CIPOLLONE MISSNER
 & BEATO LLP

Bonny E. Sweeney (Cal. Bar No. 176174)
Richard Lewis (admitted *pro hac vice*)
Kristen Ward Broz (admitted *pro hac vice*)
HAUSFELD LLP

Elizabeth C. Pritzker (Cal. Bar. No. 146267)
Jonathan K. Levine (Cal. Bar. No. 220289)
PRITZKER LEVINE LLP

*Attorneys for Plaintiffs and Interim Class Counsel*

By: */s/ Grant A. Geyerman*
Enu Mainigi (*pro hac vice*)
Luba Shur (*pro hac vice*)
Grant A. Geyerman (*pro hac vice*)
WILLIAMS & CONNOLLY LLP

Edward W. Swanson (State Bar No. 159859)
August Gugelmann (State Bar No. 240544)
SWANSON & McNAMARA LLP

*Attorneys for CVS Pharmacy, Inc.*

6