# EXHIBIT 13



# PLANET DEPOS
## We make it ≫ *happen.*

# Transcript of William Strein

**Date:** December 12, 2016

**Case:** Corcoran, et al. -v- CVS Pharmacy, Inc.

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: www.planetdepos.com

Worldwide Court Reporting | Interpretation | Trial Services

CONFIDENTIAL

CVSSM-0018919

Transcript of William Strein  1 (1 to 4)
Conducted on December 12, 2016

---

**Page 1**

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
-------------------------------------X
CHRISTOPHER CORCORAN, et al.,
            Plaintiffs,
    -against-
CVS PHARMACY, INC.,
            Defendant.
Case No.: 3:15-cv-03504-YGR
-------------------------------------X

                101 Park Avenue
                New York, New York
                December 12, 2016
                1:37 p.m.

    DEPOSITION of WILLIAM STREIN, before
Sadie L. Herbert, a RPR and Notary Public
of the States of New York and New Jersey.
```

---

**Page 2**

```
APPEARANCES:

HAUSFELD
ON BEHALF OF PLAINTIFFS:
    1700 K Street N.W.
    Suite 650
    Washington, DC  20006
BY: RICHARD LEWIS, ESQ.
    Phone 202.540.7200
    Rlewis@hausfeld.com


WILLIAMS & CONNOLLY LLP
ON BEHALF OF DEFENDANT:
    725 Twelfth Street, N.W.
    Washington, DC  20005
BY: ENU MAINIGI, ESQ.
    COLLEEN MCNAMARA, ESQ.
    Phone 202.434.5186
    Emainigi@wc.com
    Cmcnamara@wc.com
```

---

**Page 3**

```
A P P E A R A N C E S: (Cont'd)

MORGAN LEWIS & BOCKIUS LLP
ON BEHALF OF WITNESS:
    1701 Market Street
    Philadelphia, Pennsylvania  19103
BY: ERIC W. SITARCHUK, ESQ.
    Phone 215.963.5840
    Eric.sitarchuk@morganlewis.com


ALSO PRESENT:
    CHARLES BOWMAN, Videographer
    ALLISON STOLL, Express Scripts (via
    telephonic conference)
```

---

**Page 4**

```
----------------- I N D E X ------------------
WITNESS              EXAMINATION BY      PAGE
WILLIAM STREIN       MR. LEWIS          7, 152
                     MS. MAINIGI           144
                     MR. SITARCHUK         162


------------ DIRECTION NOT TO ANSWER ------------
PAGE:   12   What did Allison say?
        16   During the time you were first
             contacted in May, up until the
             time you signed the declaration,
             did someone ask you if the CVS HSP
             price was considered a cash price
             during the time you were vice
             president at Medco, from 2008 to
             2012?
        17   And did you go over any documents
             on that call?


---------------- E X H I B I T S ----------------
PLAINTIFF     DESCRIPTION               FOR I.D.
Exhibit 660   Subpoena                         6
```

CONFIDENTIAL

CVSSM-0018920

**Page 5**

```
1  ------------ E X H I B I T S (Cont'd)------------
2  PLAINTIFF        DESCRIPTION              FOR I.D.
3  Exhibit 662      Declaration of G. William    6
4                   Strein
5  Exhibit 664      Email, Bates Stamped       131
6                   CVSC-0265726 - 27
7  Exhibit 666      Pharmacy Participation     132
8                   Agreement, Bates Stamped
9                   CVSC-0265732 - 50
10 Exhibit 668      NCPDP Def                   46
11
12
13 ---------- PREVIOUSLY MARKED EXHIBITS ----------
14 PLAINTIFF        DESCRIPTION              FOR REF.
15 Exhibit 552      Letter, Bates Stamped       79
16                  CVSC-0356466
17 Exhibit 553      Email Chain, Bates          79
18                  Stamped CVSC-0386102 - 04
```

**Page 6**

1  (Exhibit 660, Subpoena, was
2  pre-marked for identification.)
3  (Exhibit 662, Declaration of G.
4  William Strein, was pre-marked for
5  identification.)
6  THE VIDEOGRAPHER: Here begins Disk
7  Number 1 of the videotaped deposition
8  of William Strein in the matter of
9  Christopher Corcoran, et al., v. CVS
10 Pharmacy, Inc. in the United States
11 District Court, Northern District of
12 California, Case
13 Number 3:15-CV-03504-YGR.
14 Today's date is December 12th,
15 2016. The time is approximately
16 1:38 p.m.
17 The videographer today is Charlie
18 Bowman representing Planet Depos. This
19 video deposition is taking place at
20 Morgan Lewis, 101 Park Avenue, New
21 York, New York.
22 Would counsel please introduce
23 yourselves for the record.
24 MR. LEWIS: Richard Lewis for the
25 plaintiff.

**Page 7**

1  MS. MAINIGI: Enu Mainigi and
2  Colleen McNamara from Williams &
3  Connolly for the defendants.
4  MR. SITARCHUK: Eric W. Sitarchuk
5  for the witness.
6  THE VIDEOGRAPHER: The court
7  reporter today is Sadie Herbert, also
8  from Planet Depos. Would the court
9  reporter please swear in the witness.
10
11 WILLIAM STREIN, the witness herein, having first
12    been duly sworn, was examined and
13    testified as follows:
14            EXAMINATION
15 BY MR. LEWIS:
16 Q  Good afternoon, Mr. Strein.
17 **A  Good afternoon.**
18 Q  Am I pronouncing your name correctly?
19 **A  Strein, yes.**
20 Q  Strein, thank you.
21 **A  Mm-hmm, mm-hmm.**
22 Q  My name is Richard Lewis and I'm a
23 lawyer for the plaintiffs in this case, I'm
24 going to take your deposition this afternoon.
25    Have you ever had your deposition taken

**Page 8**

1  before?
2  **A  Yes.**
3  Q  About how many times?
4  **A  Three or four.**
5  Q  All right. And did you ever have your
6  deposition taken when you were at Medco at 2008
7  to 2012?
8  **A  I -- I may have had it once in the 2008**
9  **to '12 period.**
10 Q  Okay. Just to go over the -- the
11 general procedures of a deposition, I'm going to
12 ask the questions, you're going to give the
13 answers, we're each going to let each other
14 speak and -- and not speak at the same time. If
15 you need to take a break at any time, just let
16 us know.
17 **A  Okay.**
18 Q  If you answer a question, I'm going to
19 assume that you understood the question. So
20 if -- if it's unclear, for any reason, just let
21 me know and I'll try and clarify the question.
22 **A  Fair enough.**
23 Q  Is there any reason why you can't give
24 accurate testimony today, any -- any medical
25 or -- any medical reason?

---

Page 85

1   A   It -- it would be clear.
2   Q   Or anybody else that could read the
3   English language?
4       MR. SITARCHUK: Objection.
5       MS. MAINIGI: Join.
6   A   "Anybody" is an absolute term, I...
7   Q   Do you know that Medco, in spite of
8   CVS's request, refused to adopt this language;
9   correct?
10      MS. MAINIGI: Objection.
11      MR. SITARCHUK: Objection.
12  A   I know that we didn't adopt it, I don't
13  know if we refused or ignored it.
14  Q   If you can turn to 552.
15      Do you know Calvin Corum?
16  A   Yes.
17  Q   Did you work with him during the years
18  you were vice president?
19  A   Yes -- well, not all the years, he left
20  prior to me.
21  Q   Do you understand this letter is a
22  response to CVS saying they're not going to
23  adopt the language in bold from Exhibit 553?
24      MR. SITARCHUK: Objection.
25  A   Yes.

Page 86

1   Q   Now, in your -- I want to return to
2   your declaration at, that's PX 662, and
3   Paragraph 9, it says on the bottom of the page,
4   "We determined that Medco's definition of 'usual
5   and customary' in its pharmacy manual did not
6   encompass membership" -- "membership program
7   prices."
8       Do you see that?
9   A   In -- well, we -- yes, okay.
10  Q   Do you see that?
11  A   Yes.
12  Q   And you made that determination, even
13  though the definition of U&C in Paragraph 13
14  doesn't even mention membership prices; correct?
15      MS. MAINIGI: Objection to form.
16  A   In -- in 2009, we had a more expansive
17  definition.
18  Q   Okay.
19  A   As referenced in Number 4.
20  Q   All right. From late 2- -- I'm sorry?
21  A   And there was a -- the marketplace had
22  a lot of changes over the course of a couple
23  years here, so in part, I can't recall the exact
24  months, but changes were made based on changes
25  in the industry.

Page 87

1   Q   All right. Let me just go back.
2       From late 2009 to 2012, Medco's uniform
3   U&C price definition is set forth in
4   Paragraph 13?
5   A   In 2009 -- yes.
6   Q   And during that time frame, the way I
7   understand your declaration, you acted on your
8   determination or maintained your determination
9   that Medco's definition of U&C does -- did not
10  encompass membership program prices; correct?
11  A   You used two different verbs,
12  "maintained" and "decided," one -- one was a
13  continuation and one was a change which --
14  Q   All right. I did, and I apologize,
15  maybe you can inform me what you did.
16      MS. MAINIGI: Objection.
17  Q   Did you decide or did you maintain?
18  A   Well, we --
19      MS. MAINIGI: Objection.
20      MR. SITARCHUK: Objection.
21  A   There was discussion during the -- the
22  time frame where more pharmacies were offering a
23  Wal-Mart type $4 program available to all
24  members -- all of their customers and the
25  evolution of -- subsequent evolution of these

Page 88

1   membership programs and then the free -- free
2   generics program that other chains rolled out
3   and all of these dynamics were playing out
4   during that time, so initially, we tried to cast
5   a broad net, hence definition in the 2009 manual
6   that did reference membership programs.
7   Subsequent to that, other discussions, it was
8   decided to be less inclusive, less broad net and
9   we adopted the language that was in Item 13,
10  Paragraph 13, does -- does not have such
11  expansive language.
12  Q   All right.
13  A   So it was a -- an attempt at a policy,
14  and a modification of that policy.
15  Q   All right. So in Paragraph 9, when you
16  say, "We determined that Medco's definition of
17  U&C in its pharmacy manual did not encompass
18  membership program prices," when -- what year
19  did that happen?
20  A   It would have been during 19- -- 2009
21  or late 2008.
22  Q   All right. And when 2010 began, was
23  that still the determination and policy of
24  Medco?
25  A   2010, beginning...

**Page 89**

1    Yes.
2    Q   And in 2011, was that still the
3 determination and the policy of Medco?
4    A   **That being that membership program**
5 **discounts were not considered U&C?**
6    Q   Correct.
7    A   Yes.
8    Q   And in 2012, you continued that policy
9 based on the determination that membership
10 prices are not U&C?
11   A   **If it's specified in the manual, yes, I**
12 **wasn't there the whole 2012.**
13   Q   All right.  And you maintained that
14 policy for those three and a half years, even
15 though the contract definition of U&C doesn't
16 mention, in any way, membership prices?
17   A   **We maintained -- I'm sorry, when you**
18 **say "that policy," the policy that membership**
19 **plans are not considered U&C?**
20   Q   Correct.
21   A   Yes.
22   Q   You maintained that all those years?
23   A   Yes.
24   Q   In spite of the fact that there's
25 nothing in the U&C definition in your manual

**Page 90**

1 that addresses membership prices?
2    A   **In the -- in the 20 -- in the third --**
3 **Paragraph 13, 2009 to 2012, yes.**
4    Q   Okay.  Now, that determination that you
5 made, that you describe in Paragraph 9 and that
6 you have now told me you maintained through 2012
7 was based fundamentally on your belief that the
8 CVS HSP had a membership fee; correct?
9        MR. SITARCHUK:  Objection.
10   A   **First of all, it wasn't based on just**
11 **CVS, it was other membership programs that may**
12 **have existed.**
13   Q   All right.  And that's because they had
14 a membership fee, that's why you said --
15   A   **They --**
16   Q   -- they should not -- that's why you
17 decided they should not be part of the U&C?
18       MR. SITARCHUK:  Objection.
19   A   **What we decided -- what we decided was**
20 **that there was -- what -- the discussion**
21 **revolved around was, what are those membership**
22 **plans and they typically involved the outreach**
23 **by a member, a person, a customer, an**
24 **application, a payment of a fee and in return,**
25 **they got some benefit and -- and I think the**

**Page 91**

1 answer to your -- I think the question is:  Was
2 that part of the discussion that we had?  And
3 the answer is yes.
4    Q   Yeah, I -- let me -- let me try and ask
5 it differently.
6    A   Okay.
7    Q   The reason -- the primary reason you
8 decided that membership club prices like an HSP
9 price should not be considered as part of U&C is
10 because they had a fee that people had to pay to
11 join?
12       MR. SITARCHUK:  Objection.
13       MS. MAINIGI:  Objection.
14   A   **Well, actually, it was because this was**
15 **a subset of the membership, it wasn't available**
16 **to all -- all of our members, and I'm talking --**
17 **when I say "members," our beneficiaries, it was**
18 **available to some, who chose to take additional**
19 **actions beyond what the benefit calls for.**
20   Q   All right.  Let's look at Paragraph 9
21 of your declaration.
22   A   Okay.
23   Q   And I'm on to Page 3, it could -- it
24 goes over to Page 3.
25       At the top of Page 3, you say, quote,

**Page 92**

1 "We viewed program members" -- let me stop.
2        You mean program members in a -- in a
3 membership club?
4    A   **That was my understanding, yes.**
5    Q   Okay.  "...particularly where program
6 members had paid a membership fee to access the
7 pharmacy's special pricing as separate and
8 distinct from cash customers who paid the
9 pharmacy's retail price."
10       Do you see that?
11   A   Yes.
12   Q   All right.  So you thought the
13 difference between membership fee payers and
14 cash payers, that you identify here, was that
15 the membership payers had to pay a fee?
16       MR. SITARCHUK:  Objection.
17       MS. MAINIGI:  Join.
18   A   **They had to pay a fee and maybe do**
19 **other things.  We weren't familiar with all the**
20 **other activities, but I do know that some had to**
21 **fill out forms and make application to be**
22 **members.**
23   Q   But -- but in Paragraph 9 --
24   A   I --
25   Q   I'm sorry, in Paragraph 9, you're

CONFIDENTIAL                                                          CVSSM-0018942

```
                                                      165
1
2   STATE OF NEW YORK    )
3                        ) ss:
4   COUNTY OF NEW YORK   )
5
6        I, SADIE L. HERBERT, a Registered
7   Professional Reporter and Notary Public, do
8   hereby certify:
9        That WILLIAM STREIN the witness
10  whose deposition is hereinbefore set forth, was
11  duly sworn by me and that such deposition is a
12  true record of the testimony given by such
13  witness.
14       No witness read and sign was
15  requested.
16       I further certify that I am not
17  related to any of the parties to this action by
18  blood or marriage; and that I am in no way
19  interested in the outcome of this matter.
20       IN WITNESS WHEREOF, I have hereunto
21  set my hand this 20th day of December 2016.
22   [signature: Sadie Herbert]
23
    _____
24  SADIE L. HERBERT
```