# Exhibit 23


```
 1            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF RHODE ISLAND
 2
                   CIVIL ACTION NOS.:
 3                    1:16-cv-46-S
                      1:16-cv-447-S
 4
     SHEET METAL WORKERS LOCAL         )
 5   NO. 20, et al.,                   )
                                       )
 6           Plaintiffs,               )
                                       )
 7               -vs-                  )
                                       )
 8   CVS PHARMACY, INC., et al.,       )
                                       )
 9           Defendants.               )
10
11
12         VIDEO DEPOSITION OF R. IRENE NEWMAN
13
14       The video deposition upon oral examination
     of R. IRENE NEWMAN, a witness produced and sworn
15   before me, Diane Zeyen, RPR, a Notary Public in
     and for the County of Hamilton, State of Indiana,
16   taken on behalf of the Defendants CVS Pharmacy,
     Inc., and Caremark, LLC, at the offices of
17   Taft Stettinius & Hollister, LLP, One Indiana
     Square, Suite 3500, Marion County, Indiana, on the
18   17th day of December, 2018, at 9:00 a.m., pursuant
     to the Federal Rules of Civil Procedure with written
19   notice as to time and place thereof.
20
21
22
23
24
25
                                                  Page 1
```

## Page 2

APPEARANCES

FOR THE PLAINTIFFS SHEET METAL WORKERS LOCAL NO. 20, et al., and IRENE NEWMAN:

Zoran (Zoki) Tasic
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
708.628.4949
zorant@hbsslaw.com

and

William N. Riley
RILEY WILLIAMS & PIATT, LLC
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
317.633.5270
wriley@rwp-law.com

FOR THE DEFENDANTS CVS PHARMACY, INC., and CAREMARK, LLC:

Kylie Hoover
William T. Burke
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
202.434.5388
khoover@wc.com
wburke@wc.com

LEGAL VIDEOGRAPHER:

Peter Hudson

## Page 3

INDEX OF EXAMINATION
PAGE
DIRECT EXAMINATION .................................. 6
  Questions by Kiley Hoover
CROSS-EXAMINATION .................................. 91
  Questions by Zoran (Zoki) Tasic
REDIRECT EXAMINATION ............................... 97
  Questions by Kiley Hoover

## Page 4

INDEX OF EXHIBITS
                                                    PAGE
Newman Deposition Exhibit No.:
Exhibit 1 - Subpoena to Testify at a ....... 15
  Deposition in a Civil Action
Exhibit 2 - Administrative Services ........ 24
  Contract
Exhibit 3 - CVS Pharmacy Material ......... 39
Exhibit 4 - Email Chain Beginning with a .... 41
Exhibit 5 - Indiana/Kentucky Carpenters ..... 47
  Welfare Fund, Minutes of the Meeting
  of the Board of Trustees, Wednesday,
  March 17, 2010
Exhibit 6 - Trust Participation Agreement .... 63
Exhibit 7 - UBC Master Template ......... 66
Exhibit 8 - February 2008 Letter to ....... 68
  Irene Newman from Bart Gerber with
  Enclosures
Exhibit 9 - Twenty-two Page Document ....... 70
  Beginning with a 10/26/11 Email to
  David Tharp, Michael Lauer,
  Irene Newman from Lynn Smith
Exhibit 10 - Amended and Restated ......... 76
  Integrated Prescription Drug Program
  Master Agreement
Exhibit 11 - Email Chain Beginning with a .... 78
  4/9/16 Email from Patrick Fiduccia
Exhibit 12 - 3/31/17 Email from ......... 81
  Patrick Fiduccia with Attachment
Exhibit 13 - Document Entitled CVS ........ 83
  Caremark's Generic Rip Off
Exhibit 14 - Indiana Carpenters Welfare ..... 86
  Fund's Responses to CVS Pharmacy,
  Inc.'s Fourth Set of Interrogatories
  to Plaintiffs

## Page 5

THE VIDEOGRAPHER: We are on the record at 9:00 a.m. on December 17, 2018, beginning the video deposition of Irene Newman, taken in the matter of Sheet Metal Workers Local 20, et al., versus CVS Pharmacy Inc., pending in the United States District Court, for the District of Rhode Island, Civil Action No. 116-cv-046.

This deposition is being held at the law office of Taft Stettinius & Hollister, One Indiana Square, Suite 3500, Indianapolis, Indiana.

My name is Peter Hudson, the videographer, and the court reporter is Diane Zeyen, both representing Veritext-Texas.

Counsel, please now state your appearances.

MS. HOOVER: Kylie Hoover on behalf of CVS Pharmacy, Inc., and Caremark, LLC.

MR. BURKE: William Burke on behalf of CVS Pharmacy, Inc., and Caremark, LLC.

MR. TASIC: Zoki Tasic on behalf of Ms. Newman and also the plaintiffs.

MR. RILEY: William Riley, Riley Williams & Piatt, on behalf of Ms. Newman and the plaintiffs.

THE VIDEOGRAPHER: Thank you. The court

```
 1 Q  Is that a local pharmacy?
 2 A  Yes.
 3 Q  And what do you remember about the specifics of
 4    that program?
 5 A  That I got some drugs for free.
 6 Q  Do you remember what types of drugs were free?
 7 A  Antibiotics, that's the main one that I know.
 8 Q  Okay.  And did you have to pay a fee or sign up
 9    for a program in order to get those free drugs?
10 A  No.
11 Q  And do you recall Kmart announcing any type of
12    generic program?
13 A  No.
14 Q  What about Walgreens?
15 A  No.
16 Q  Have you heard of CVS's Health Savings Pass
17    program?
18 A  No.
19 Q  We are going to talk about that program a little
20    bit today.  If I refer to it as the HSP
21    program --
22 A  Yeah.
23 Q  -- is that okay?
24 A  Yes.
25 Q  All right.  I am going to show you what I will
                                                    Page 38
```

```
 1    mark as Exhibit 3.
 2         (Newman Deposition Exhibit 3 was marked for
 3    identification.)
 4 Q  Let's take a look at that for a minute.
 5         MR. TASIC:  I am sorry, I have a question
 6    about this exhibit.
 7         MS. HOOVER:  Uh-huh.
 8         MR. TASIC:  So we have got Bates numbering,
 9    so it's just two different documents attached,
10    the 174, and then it goes to 190 and 191 and
11    194 -- I mean, 192.
12         MS. HOOVER:  I am sorry, it has two sets of
13    Bates stamping on it --
14         MR. TASIC:  Right.  Right.
15         MS. HOOVER:  -- from two prior litigations,
16    so.
17         MR. TASIC:  Right.  Oh, no, I am sorry, I'm
18    just looking at the one at the very bottom.
19         MS. HOOVER:  Oh, yes.
20         MR. TASIC:  How it doesn't -- it is not all
21    in sequence; right?
22         MS. HOOVER:  Yes.
23         MR. TASIC:  So 174 goes to 190.  I'm
24    assuming they were --
25         MS. HOOVER:  Yeah, separate documents.
                                                    Page 39
```

```
 1         MR. TASIC:  Yeah, separate documents, but
 2    the same look to it.  Thank you.
 3 Q  Do any of these documents help refresh your
 4    recollection about CVS's HSP program?
 5 A  No.
 6 Q  Have you ever seen any marketing material like
 7    this before?
 8 A  No.
 9 Q  Looking at the first page here, which is
10    Bates labeled CVSC-174.  Do you see where it
11    says "sign up and save"?
12 A  Yes.
13 Q  Does that suggest to you that CVS was offering a
14    program that required you to sign up?
15         MR. TASIC:  Objection to form.
16 A  Yes.
17 Q  From this document can you tell what pricing
18    was being offered through that program?
19         MR. TASIC:  Objection to form.
20 A  No.
21 Q  Do you see where it says "9.99 for 90 days"?
22 A  Yes.
23 Q  Okay.  And you see above that where it says
24    "introducing the new CVS Health Savings Pass"?
25 A  Yes.
                                                    Page 40
```

```
 1 Q  I read that correctly?  Did I read that
 2    correctly?
 3 A  Yes.
 4 Q  Okay.  Do you recall ever answering any
 5    questions from members or trustees about
 6    pharmacy prescription programs?
 7         MR. TASIC:  Objection to form.
 8 A  No.
 9 Q  Do you recall, we talked about the pharmacy
10    Meijer before and their program, do you recall
11    any discussions with anyone at the fund about
12    the Meijer program?
13 A  No.
14         (Newman Deposition Exhibit 4 was marked for
15    identification.)
16 Q  I am going to show you a document marked
17    Exhibit 4.  This is an email chain dated
18    April 23rd, 2010.  Just take a minute to look
19    this document over.  Do you recognize this
20    document?
21 A  No.
22 Q  Is this a fair and accurate copy of an email you
23    received?
24 A  That's my name, yes.
25 Q  Where do you see your name on the document?
                                                    Page 41
```

11 (Pages 38 - 41)

#### Page 42

1  A  At the very top, "From: Irene Newman."
2  Q  And the email address on the document is --
3  A  Yes.
4  Q  -- INewman@zenithadmin.com?
5  A  Yes.
6  Q  That was your email address when you were at
7     Zenith Administrators?
8  A  At one time, yes.
9  Q  Do you recall receiving this email chain in
10    2010?
11 A  No.
12 Q  Despite the fact that you don't recall it, do
13    you have any reason to believe that you didn't
14    receive this email?
15 A  No.
16 Q  Is this the document that counsel showed you
17    during your preparation session --
18 A  No.
19 Q  -- last week?  Okay.
20       So I want you to take a look first at the
21    first email in this email chain, which starts
22    about halfway down on the first page, it is
23    dated April 2nd, 2010.  Do you see what I am
24    looking at?
25 A  Yes.

#### Page 43

1  Q  Okay.  And is this an email from Bart Gerber to
2     you?
3  A  Yes.
4  Q  Who's Bart Gerber?
5  A  He was the manager that we went to with Medco.
6  Q  He was employed by Medco?
7  A  Yes.
8  Q  And he was a contact for prescription drug
9     issues?
10 A  Yes.
11 Q  Do you remember ever speaking with Bart Gerber
12    in person?
13 A  Yes.
14 Q  When would you have spoken to him in person?
15 A  At the Board of Trustees meeting.
16 Q  He also attended those meetings?
17 A  Some.
18 Q  Did you ever speak to him on the phone?
19 A  Yes.
20 Q  And how often would you speak to him on the
21    phone?
22 A  Maybe once a month.
23 Q  Why would you call him?
24 A  If a member had a problem with the prescription.
25 Q  What types of problems might members have?

#### Page 44

1  A  I can't recall.
2  Q  Do you recall what types of problems you might
3     reach out to Bart Gerber for?
4  A  If a member had a problem.
5  Q  You don't remember the types of issues --
6  A  No.
7  Q  -- he would deal with?
8  A  No, I'm sorry.
9  Q  That's fine.  This email copies two people,
10    Charles Whitson, W-H-I-T-S-O-N, and Louis Zollo,
11    Z-O-L-L-O.
12       Do you know who Mr. Whitson is?
13 A  Worked for Medco.
14 Q  Okay.  Do you know what his position was?
15 A  I don't know the title now.
16 Q  Is he someone who you might speak with or reach
17    out to on --
18 A  Yes.
19 Q  -- member issues?
20 A  Yes.
21 Q  Similar to Mr. Gerber?
22 A  Yes.
23 Q  And what about Mr. Zollo?
24 A  He also was at Medco, and I believe he was in
25    the pharmacy department.

#### Page 45

1  Q  Was he also a person that you would reach out to
2     if members had issues?
3  A  No.
4  Q  Was there any other reason why you might
5     interact with Mr. Zollo?
6  A  No.
7  Q  Just look at the first paragraph of this email.
8     What's your understanding of why Mr. Gerber sent
9     this to you?
10       MR. TASIC:  Objection to form.
11 A  They are talking about a meeting that they
12    brought these issues up.  And this is probably a
13    follow-up from that meeting.
14 Q  Would Mr. Gerber typically send information
15    directly to you?
16 A  I guess on occasion.
17 Q  Was it typical for him to send information just
18    to you and not to include other trustees or
19    other people at the fund?
20 A  I don't know.
21 Q  Okay.  I am going to read the first sentence of
22    this April 2nd, 2010 email and if you could just
23    let me know if I've read it accurately.  "At the
24    3/17 Board meeting, Mike Lauer mentioned that it
25    would be helpful to have some talking points in

12 (Pages 42 - 45)

| | |
|---|---|
| 1  MR. TASIC: Objection to form. Asked and<br>2  answered.<br>3 A  I don't know.<br>4 Q  I'll represent to you that CVS's HSP program was<br>5  a membership program like Walgreens.<br>6    Is it then fair to say that CVS was not<br>7  required to submit its membership program prices<br>8  as its U&C prices?<br>9    MR. TASIC: Objection to form.<br>10 A  I don't know.<br>11 Q  What do you understand this language to mean?<br>12    MR. TASIC: Objection to form. What<br>13  language are you referring to?<br>14    MS. HOOVER: Looking again at the language<br>15  that says "a member-only price differs from the<br>16  pharmacy's U&C price."<br>17 A  No. I mean, I'm just not aware of this of how<br>18  this worked.<br>19 Q  Looking at the fourth paragraph on this page, I<br>20  am just going to read the first sentence this<br>21  time, "In instances where a Medco card holder<br>22  pays to enroll in one of the retailers' low cost<br>23  generic programs, it is the decision of the<br>24  member as to which card and/or benefit they<br>25  would like to utilize for the filling of their<br>Page 54 | 1    MR. TASIC: Objection to form.<br>2 A  I read that in the paragraph, yes.<br>3 Q  In other words, they had to choose one or the<br>4  other?<br>5    MR. TASIC: Objection to form.<br>6 A  Yes.<br>7 Q  And if they chose the membership program price,<br>8  then that claim would be adjudicated outside of<br>9  the benefit under the fund?<br>10    MR. TASIC: Objection to fund.<br>11 A  I don't know that.<br>12    MR. TASIC: I just want to ask, how much<br>13  longer are we going to spend on this document?<br>14  We are up to an hour or so. I think it would be<br>15  a good time to take a break soon.<br>16    MS. HOOVER: I would say less than ten<br>17  minutes.<br>18    MR. TASIC: Okay.<br>19    MS. HOOVER: We will finish up with this<br>20  one and then move on.<br>21    THE WITNESS: Okay.<br>22    MR. TASIC: Does that sound okay?<br>23    THE WITNESS: Yes.<br>24    MR. TASIC: Good.<br>25 Q  So looking at the top email, the second email on<br>Page 56 |
| 1  prescription, as only one benefit card can be<br>2  used at the point of sale."<br>3    Did I read that sentence correctly?<br>4 A  Yes.<br>5 Q  Is it possible that some of the fund's members<br>6  or the beneficiaries chose to enroll in programs<br>7  like Walgreens' program?<br>8    MR. TASIC: Objection to form.<br>9 A  I don't know.<br>10 Q  The first part of this sentence says "where a<br>11  Medco card holder pays to enroll in one of the<br>12  retailers' low cost generic programs," what do<br>13  you understand a Medco card holder to mean?<br>14 A  Well, in this case, it would be a participant<br>15  under the Indiana Carpenters Welfare Fund.<br>16 Q  So does this sentence, do you understand this<br>17  sentence to suggest that those -- the fund's<br>18  members could enroll in these programs?<br>19 A  Yes.<br>20    MR. TASIC: Objection to form.<br>21 Q  Still focused on that sentence, do you<br>22  understand that if those members enrolled in the<br>23  program they couldn't combine the benefit they<br>24  had through the fund with the benefit under the<br>25  program?<br>Page 55 | 1  this chain, back on the first page, do you see<br>2  that you forwarded this email to four recipients<br>3  on April 23rd, 2010?<br>4 A  Yes.<br>5 Q  And who were those recipients, starting with the<br>6  email address mjlmbl@a- --<br>7 A  Mike Lauer.<br>8 Q  That's Mike Lauer. Is that a personal address?<br>9 A  Yes.<br>10 Q  Do you know if he also used a business address<br>11  for fund issues?<br>12 A  Yes.<br>13 Q  And who is Mike Lauer?<br>14 A  A trustee.<br>15 Q  And the second benefic- -- or, sorry, the second<br>16  recipient that you forwarded the email to is<br>17  David Tharp?<br>18 A  Yes.<br>19 Q  Who is David Tharp?<br>20 A  He's the EST.<br>21 Q  He's the what?<br>22 A  The EST.<br>23 Q  What is that?<br>24 A  Actually on this it would be he was the<br>25  co-chairman of the Board of Trustees for the<br>Page 57 |

15 (Pages 54 - 57)

```
 1    Indiana Carpenters Welfare Fund.
 2  Q And what did you say he was?  What was the first
 3    thing you said?
 4  A Executive secretary/treasurer for the
 5    Indiana Carpenters.
 6  Q The union?
 7  A The union, yes.
 8  Q Okay.  So he had, at the time of this email he
 9    had a position within the union --
10  A Yes.
11  Q -- separately at a position within the fund?
12  A Yes.
13  Q And he was receiving this email in his capacity
14    as a trustee for the fund?
15  A Yes.
16  Q And Wnix@industrialcontractors.com?
17  A William Nix, he was a co-chairman.
18  Q Co-chairman for what?
19  A Indiana Carpenters Welfare Fund.
20  Q In other words, David Tharp and William Nix were
21    the co-chairmen of the fund's Board of Trustees?
22  A Yes.
23  Q And you cc'd MaryJayne Mahern?
24  A Yes.
25  Q Who is that?
```
Page 58

```
 1  A That's Dave Tharp's secretary.
 2  Q Do you recall why you forwarded this email to
 3    these recipients?
 4  A Because they're the main trustees.
 5  Q What do you mean when you say "main trustees"?
 6  A Well, two are the co-chairmen.  And then
 7    Mike Lauer, he had some knowledge about the
 8    prescription plan, and he had asked the question
 9    below also.
10  Q When you say Mike Lauer had some knowledge about
11    prescription drug -- or the prescription drug
12    plan, what do you mean?
13  A He asked the question below.
14  Q Do you recall him other times raising other
15    issues about the prescription drug benefit?
16  A At times, yes.
17  Q Does he stick out in your mind as asking more
18    questions about that benefit than other
19    trustees?
20  A No.
21  Q How many trustees were there at the time?
22  A I believe five union, five management.
23  Q Okay.
24  A But I would probably have to go back to my
25    records and check that.
```
Page 59

```
 1  Q So you were just forwarding to a subset of those
 2    trustees?
 3  A Well, and, actually, if you look at the list of
 4    trustees, there are six on each side.
 5  Q Okay.  So 12 at the time?
 6  A Yes.
 7  Q And you were just sending to the co-chairmen and
 8    to the trustee who asked the question?
 9  A That's correct.
10  Q Do you recall discussing this information with
11    any of these --
12  A No.
13  Q -- recipients?
14    Putting aside this specific email, do you
15    recall any discussions with any trustee about
16    generic drug programs?
17  A No.
18  Q Do you recall ever responding to Mr. Gerber's
19    email?
20  A No.
21  Q Do you recall ever discussing this information
22    with Mr. Gerber?
23  A No.
24  Q Do you ever recall discussing this information
25    with anyone?
```
Page 60

```
 1  A No.
 2  Q After receiving this email from Mr. Gerber, do
 3    you know if the fund requested that Medco make
 4    any modifications to its prescription drug
 5    benefit?
 6  A No.
 7     MR. TASIC:  Objection to form.
 8  Q No, you don't know or, no, they didn't?
 9  A No, I don't know.
10  Q Do you know if the fund made any request to
11    change the pricing that Medco offered?
12     MR. TASIC:  Objection to form.
13  A I don't know.
14  Q Do you know if the fund or anyone else told
15    Medco that it expected to receive the prices
16    offered --
17     MR. TASIC:  Objection to form.
18  Q -- through the membership programs?
19  A No.
20     MS. HOOVER:  If you could just let me
21    finish my question.
22  Q Do you recall the fund or anyone else telling
23    Medco that they believed Medco was breaching its
24    contract by not reporting or not requiring
25    pharmacies to report membership program prices
```
Page 61

16 (Pages 58 - 61)

## Page 98

1   Wouldn't you agree that Walgreens is just
2   one example of this type of program?
3       MR. TASIC: Objection to form.
4  A  Based upon that sentence, yes.
5  Q  And do you have any reason to believe that the
6   same language wouldn't apply to some other
7   pharmacy's membership program?
8       MR. TASIC: Objection to form.
9  A  I have no idea.
10 Q  Do you have any reason to believe that this
11  didn't apply to CVS's HSP program?
12      MR. TASIC: Objection to form.
13 A  I have no idea.
14      MS. HOOVER: Nothing further.
15      MR. TASIC: We don't have anything else
16  either.
17      THE VIDEOGRAPHER: This then concludes the
18  deposition of Irene Newman on December 17th,
19  2018. The time is 11:38 a.m. and we are off the
20  record.
21      THE REPORTER: Do you want this
22  transcribed?
23      MS. HOOVER: Yes.
24      THE REPORTER: What kind of copy?
25      MS. HOOVER: Just electronic.

## Page 99

1       MS. REPORTER: Do you need a copy of the
2   transcript?
3       MR. TASIC: Yes.
4       THE REPORTER: Is Etran okay?
5       MR. TASIC: Mini. Reserve signature.
6
7
8       AND FURTHER DEPONENT SAITH NOT.
9
10
11
     _____
12      R. IRENE NEWMAN

## Page 100

1  STATE OF INDIANA     )
                        ) SS:
2  COUNTY OF HAMILTON   )
3
4       I, Diane Zeyen, RPR, a Notary Public in and for
5   the County of Hamilton, State of Indiana, at large,
6   do hereby certify that R. IRENE NEWMAN, the deponent
7   herein, was by me first duly sworn to tell the
8   truth, the whole truth, and nothing but the truth in
9   the aforementioned matter;
10      That the foregoing deposition was taken on
11  behalf of the Defendants CVS Pharmacy, Inc., and
12  Caremark, LLC, at the offices of Taft Stettinius &
13  Hollister, LLP, One Indiana Square, Suite 3500,
14  Indianapolis, Marion County, Indiana, on the 17th
15  day of December, 2018, at 9:00 a.m., pursuant to the
16  Federal Rules of Civil Procedure;
17      That said deposition was taken down in
18  stenograph notes and afterwards reduced to
19  typewriting under my direction, and that the
20  typewritten transcript is a true record of the
21  testimony given by the said deponent; and that the
22  signature by said deponent to her deposition was not
23  waived;
24      That the parties were represented by their
25  counsel as aforementioned.

## Page 101

1       I do further certify that I am a disinterested
2   person in this cause of action, that I am not a
3   relative or attorney of either party or otherwise
4   interested in the event of this action, and that I
5   am not in the employ of the attorneys for any party.
6       IN WITNESS WHEREOF, I have hereunto set my hand
7   and affixed my notarial seal on this 7th day of
8   January, 2019.
9
10
11      N O T A R Y   P U B L I C
12
13  My Commission Expires:
14  September 2, 2024
15  County of Residence:
16  Hamilton County

26 (Pages 98 - 101)