# Exhibit 25

```
 1            IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF RHODE ISLAND
 3
 4    SHEET METAL WORKERS LOCAL        )
      NO. 20 WELFARE AND BENEFIT FUND )
 5    and INDIANA CARPENTERS WELFARE   )
      FUND,                            )
 6                                     )
                Plaintiffs,            )
 7                                     ) Case No.
         vs.                           ) 1:16-cv-00046-S
 8                                     )
      CVS HEALTH CORPORATION,          )
 9                                     )
                Defendant.             )
10    ---------------------------------)
      PLUMBERS WELFARE FUND, LOCAL     )
11    130, U.A. on behalf of itself    )
      and all others similarly         )
12    situated,                        )
                                       )
13              Plaintiffs,            )
                                       ) Case No.
14       vs.                           ) 1:16-cv-00047-S
                                       )
15    CVS HEALTH CORPORATION,          )
                                       )
16              Defendant.             )
17
18        The deposition of JOSEPH OHM, taken before
19    Maria S. Winn, CSR, RPR and CRR, pursuant to the
20    Federal Rules of Civil Procedure for the United
21    States District Courts pertaining to the taking of
22    depositions, at Mayer Brown, LLP, 71 South Wacker
23    Drive, Suite 3200, Chicago, Illinois, commencing
24    at 9:01 a.m. on March 12, 2019.
25
```

```
 1 PRESENT:
 2
     HAGENS BERMAN SOBOL SHAPIRO LLP
 3   By MR. DANIEL J. KUROWSKI
     455 N. Cityfront Plaza Drive - Suite 2410
 4   Chicago, Illinois  60611
     (708) 628-4949
 5   dank@hbsslaw.com
 6      and
 7 GREGORIO MARCO
     By MR. GREGORY W. HOSE
 8     MS. MADELINE REMISH
     Two North LaSalle Street - Suite 1650
 9   Chicago, Illinois  60602
     (312) 263-2343
10   ghose@gregoriolaw.com
     mremish@greogriolaw.com
11
     appeared on behalf of the Plaintiffs;
12
13
     WILLIAMS & CONNOLLY LLP
14   By MS. KYLIE HOOVER
       MR. WILLIAM T. BURKE
15     MS. SARA GOLDMAN
     725 Twelfth Street, N.W.
16   Washington, DC  20005
     (202) 434-5000
17   khoover@wc.com
     wburke@wc.com
18   sgolabek-goldman@wc.com
19      appeared on behalf of the Defendants;
20
21
22 ALSO PRESENT:
23   MR. DANIEL FROMAN, Legal Videographer.
24
25
                                        Page 2
```

```
 1 EXHIBIT      DESCRIPTION          PAGE
 2 Exhibit 10  Minutes of the Meeting of the   77
             Trustees of the Plumbers Welfare
 3           Fund Local 130 UA
 4 Exhibit 11  Minutes of the Meeting of the   99
             Trustees of the Plumbers Welfare
 5           Fund Local 130 UA
 6 Exhibit 12  Letter to Terry J. Musto        108
 7 Exhibit 13  Letter to the Board of Trustees 117
             of the Welfare Fund
 8
     Exhibit 14  Second Amendment to Express   142
 9           Scripts, Inc., Prescription Drug
             Program Agreement
10
     Exhibit 15  Express Scripts, Inc., Pharmacy 144
11           Benefit Management Agreement
12 Exhibit 16  Amendment to Express Scripts,   145
             Inc., Pharmacy Benefit
13           Management Agreement
14 Exhibit 17  Second Amendment to Express     147
             Scripts, Inc., Pharmacy Benefit
15           Management Agreement
16 Exhibit 18  Contractual Credit Request,     172
             Performance and Financial
17           Guarantee Check Request, Reissue
             Request
18
     Exhibit 19  Introducing the New CVS Health 187
19           Savings Pass
20 Exhibit 20  Health Savings Pass Medication  191
             List
21
     Exhibit 21  PBM RFP for Plumbers Welfare   194
22           Fund Local 130
23 Exhibit 22  Proposed First Amended Complaint 216
24 Exhibit 23  Excerpt of Data                 224
25
                                        Page 4
```

```
 1            I N D E X
 2 WITNESS:                              PAGE:
 3 JOSEPH F. OHM
 4   Examination by Ms. Hoover              8
 5   Examination by Mr. Kurowski          317
 6   Further Examination by Ms. Hoover    325
 7
 8
 9 EXHIBIT      DESCRIPTION          PAGE
10 Exhibit 1   Deposition Notice             15
11 Exhibit 2   Plumbers Welfare Fund Local 130 18
             UA's Responses to CVS Pharmacy,
12           Inc.'s, First Set of
             Interrogatories to Plaintiffs
13
     Exhibit 3   Plumbers Welfare Fund Local 130 29
14           UA and Health and Welfare Plan
15 Exhibit 4   2017 Restatement of the Trust  30
             Agreement of the Plumbers
16           Welfare Fund Local 130 UA
17 Exhibit 5   Newsletter                    49
18 Exhibit 6   Merger Action Log             51
19 Exhibit 7   Minutes of the Meeting of     61
             Trustees of Plumbers Welfare
20           Fund Local 130 UA
21 Exhibit 8   Minutes of the Meeting of the 61
             Trustees of Plumbers Welfare
22           Fund Local 130 UA
23 Exhibit 9   Excerpt from Midwest Employee 76
             Benefit Funds Coalition Website
24
25
                                        Page 3
```

```
 1 EXHIBIT      DESCRIPTION          PAGE
 2
     Exhibit 24  Consulting Agreement, Plumbers 251
 3           Local 130 Benefit Fund
 4 Exhibit 25  Plumbers Welfare Fund Local 130, 258
             2016 Audit Report, March 2018
 5
     Exhibit 26  E-mail                        271
 6
     Exhibit 27  Letter from Gierat to O'Malley 281
 7
     Exhibit 28  E-mail from Gerber to Newman  294
 8
     Exhibit 29  CVS Caremark's Generic Ripoff 302
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                        Page 5
```

2 (Pages 2 - 5)

**Page 134**

```
 1   Foundation.
 2       Go ahead.
 3   A   It would.
 4  BY MS. HOOVER:
 5   Q   And would the Fund have expected Segal to
 6  keep up with developments in the prescription drug
 7  marketplace?
 8       MR. KUROWSKI: Same objections.
 9   A   It would.
10  BY MS. HOOVER:
11   Q   Would the Fund expect Segal to let the
12  trustees and employees know if something important
13  happened in the prescription drug market?
14       MR. KUROWSKI: Objection, vague.
15  Foundation.
16   A   It would.
17  BY MS. HOOVER:
18   Q   And would the Fund expect Segal to
19  present information to the trustees that would be
20  important or relevant to those trustees making
21  decisions about the prescription drug benefits
22  offered by the Fund?
23       MR. KUROWSKI: Objection, vague.
24  Foundation.
25   A   It would.
```

**Page 135**

```
 1       (Whereupon, Ms. Madeline Remish
 2        entered the conference room.)
 3  BY MS. HOOVER:
 4   Q   The trust agreement, which I can point
 5  you to, if you aren't familiar with this
 6  provision, but are you familiar that the trust
 7  agreement authorizes trustees to retain one or
 8  more medical consultants to advise the trustees?
 9   A   I'm not familiar with that particular
10  section.
11   Q   If you want to take a look at it, this is
12  Exhibit 3, at page 29.
13   A   Okay. I'm there.
14   Q   And Section 8.21 is called: "Medical
15  Consultant."
16       Do you see that?
17   A   I do.
18   Q   Have the trustees retained a medical
19  consultant to advise them?
20   A   They have.
21   Q   Who is that person?
22       MR. KUROWSKI: Objection, vague.
23  Foundation.
24   A   Dr. Khoury. I -- his first name escapes
25  me.
```

**Page 136**

```
 1  BY MS. HOOVER:
 2   Q   How long has Dr. Khouri served as the
 3  medical consultant for the Fund?
 4   A   Several years.
 5   Q   Do you know if anyone served in that
 6  position prior to Dr. Khouri?
 7   A   I do not, no.
 8   Q   What is Dr. Khouri's role with respect to
 9  the Fund?
10   A   Primarily, he will review medical claims
11  for medical -- claims that have been submitted
12  that are possibly denied by the Welfare Fund, he
13  will review for medical necessity to see if they
14  should be paid pursuant to the terms of the plan.
15   Q   Does he advise the Fund on issues related
16  to prescription drug benefits?
17   A   It's possible.
18       MR. KUROWSKI: Objection, vague.
19  Foundation.
20  BY MS. HOOVER:
21   Q   During the period 2008 to 2016, has the
22  Fund ever employed any other agents to perform
23  administrative functions for the Fund?
24       MR. KUROWSKI: Objection, vague.
25   A   Not to my knowledge.
```

**Page 137**

```
 1  BY MS. HOOVER:
 2   Q   In other words, are most administrative
 3  functions handled by the Fund staff that we
 4  previously discussed?
 5   A   Or their consultants, yes.
 6   Q   Other than the consultants -- and I'll
 7  also include Express Scripts, that we already
 8  discussed -- are there any other third parties
 9  that the Welfare Fund contracts with to provide
10  services related to prescription drug benefits?
11   A   Not that I can recall.
12   Q   All right. So I want to talk a little
13  bit more about Express Scripts, which you've
14  mentioned before.
15       Do you understand that the case concerns
16  the pricing for generic drugs offered under the
17  prescription drug benefit plan of the Fund?
18       MR. KUROWSKI: Objection, vague.
19   A   Could you repeat that?
20  BY MS. HOOVER:
21   Q   Yes. Do you under- -- generally
22  understand that this case concerns the pricing
23  offered for generic drugs through the prescription
24  drug benefit plan of the fund?
25       MR. KUROWSKI: Objection, foundation.
```

35 (Pages 134 - 137)

**Page 138**

1  A  Yes. Yes.
2  BY MS. HOOVER:
3  Q  And in order to provide prescription drug
4  benefits, the Fund contracts with a pharmacy
5  benefits manager. Correct?
6  A  That's correct.
7  Q  And you referred to that previously as a
8  PBM. Correct?
9  A  That's correct.
10  Q  And you testified before that the Fund's
11  current PBM is Express Scripts?
12  A  That's correct.
13  Q  If I refer to them interchangeably as
14  Express Scripts or ESI, will you understand that?
15  A  I will.
16  Q  And how long has Express Scripts been the
17  Fund's PBM?
18  A  Several years. For several years.
19  Q  Has Express Scripts been the Fund's PBM
20  since at least 2008?
21  A  I don't know.
22  Q  What's your understanding of what a PBM
23  is?
24  A  The PBM will provide pharmaceutical drug
25  services on behalf of the -- the Fund by utilizing

**Page 139**

1  its retail -- the retail pharmacies belonging to
2  its network to allow them to fill prescriptions,
3  bill the pharmacy benefits manager, who then will,
4  in turn, submit invoices to the Fund office for
5  payment.
6  Q  Okay. We'll go through each of those
7  responsibilities in a little bit more detail in a
8  second.
9     You mentioned before Heidi Jurish.
10    Other than Ms. Jurish, who else at
11  Express Scripts is assigned to cover the Fund's
12  account?
13  A  No one that I can recall.
14  Q  Are you familiar with Aaron McDonald?
15  A  I am.
16  Q  Do you know if that's an employee of
17  Express Scripts?
18  A  It is.
19  Q  Was Mr. McDonald ever assigned to the
20  Fund's account?
21  A  I don't know.
22  Q  What about Katty Rodriguez?
23  A  I don't know.
24  Q  Are you familiar with Katty Rodriguez?
25  A  I am.

**Page 140**

1  Q  And is she an employee of Express
2  Scripts?
3  A  She is.
4  Q  Who at the Fund primarily interacts with
5  Ms. Jurish or other people at Express Scripts
6  assigned to the Fund?
7     MR. KUROWSKI: Objection, vague.
8  A  It would depend on the issue at hand.
9  But primarily, it would be me.
10  BY MS. HOOVER:
11  Q  And what types of issues are you in
12  contact with ESI about?
13  A  As I mentioned previously, you know, we
14  may be in contact with Express Scripts about
15  manufacturers' rebates, about our -- any kind of
16  service issues that we may be having at a
17  particular point in time with Express Scripts.
18  Q  Do the Fund's consultants also interact
19  with the ESI personnel responsible for the Fund's
20  account?
21  A  They do.
22  Q  What types of issues would the
23  consultants interact with ESI about?
24  A  So somebody like PSG would interact with
25  Express Scripts on an ongoing basis about trends

**Page 141**

1  in the industry, specifically as it relates to our
2  plan.
3     Maybe a hot topic right now is specialty
4  drugs.
5     Depending on a particular project that's
6  going on at a point in time, they could be -- PSG
7  could be in contact with ESI about the calendar
8  year audit.
9     Depending on where we are in the
10  contract, it could be RFP or market check, just --
11  so there's a variety of topics that PSG could be
12  in discussion with ESI about.
13  Q  And prior to PSG being the Fund's
14  consultant, you testified that it was Buck, and
15  prior to that, Segal.
16    So is it fair to say that Buck and Segal
17  would have interacted with ESI about similar
18  issues?
19  A  Yes.
20    MR. KUROWSKI: Objection, vague.
21    Foundation.
22  BY MS. HOOVER:
23  Q  Do representatives from Express Scripts
24  ever attend Fund board meetings?
25  A  No.

### Page 206

1  A  Prior to August 2016.
2  Q  Who authorized the lawsuit prior to
3  2016 -- August 2016?
4  A  The co-chairs of the Welfare Fund.
5  Q  When did they authorize the lawsuit?
6  A  Approximately June 2016.
7  Q  You testified before that in order for
8  the Board of Trustees to take action, there had to
9  be a majority vote of the board; is that correct?
10     MR. KUROWSKI: Objection, vague.
11  Foundation. Misstates the witness' prior
12  testimony.
13     You may answer.
14  A  Yes, that's correct.
15  BY MS. HOOVER:
16  Q  Where does the authority for the
17  co-chairs to authorize a lawsuit without a vote of
18  the board come from?
19  A  They were acting -- the co-chairs were
20  acting on behalf of the Board of Trustees.
21  Q  Why did the Fund vote in December 2017,
22  if the case had already been filed?
23  A  They were -- at that point, voted to add
24  Caremark as a party to the lawsuit.
25  Q  Okay. So did the Board of Trustees ever

### Page 207

1  vote for the original lawsuit to be filed against
2  CVS?
3  A  I don't recall.
4  Q  Again, given the provisions in the trust
5  agreement regarding the requirement of a majority
6  vote, where does the authority of the co-chairs to
7  act on behalf of the Fund without a vote come
8  from?
9     MR. KUROWSKI: Objection, vague.
10  Foundation.
11  A  I don't know.
12  BY MS. HOOVER:
13  Q  You testified that the co-chairs of the
14  Fund authorized this lawsuit in June 2016.
15     What was their factual basis for
16  authorizing the lawsuit?
17  A  I believe --
18     MR. KUROWSKI: Objection.
19     THE WITNESS: Beg your pardon. Sorry.
20     MR. KUROWSKI: Calls for attorney-client
21  privileged communications.
22     To the extent that your answer requires
23  you to divulge the substance of any
24  communications that any of the Fund trustees
25  may have had with counsel, I'm going to

### Page 208

1  instruct you not to answer.
2     If you may otherwise answer, you can do
3  so without divulging the substance of such
4  communications.
5     MS. HOOVER: Just for the record, I'm not
6  asking for the legal advice or mental
7  impressions of counsel.
8     I'm asking for the factual basis for the
9  co-chairs' authorization of the lawsuit
10  against CVS.
11     MR. KUROWSKI: Same objection.
12  A  I believe the facts of the case are
13  stipulated in the complaint.
14  BY MS. HOOVER:
15  Q  The complaint wasn't filed until August
16  of 2016. You testified that the co-chairs
17  authorized the lawsuit in June of 2016.
18     What's your understanding of the facts
19  that they knew at the time they authorized the
20  lawsuit?
21     MR. KUROWSKI: Objection, vague.
22  Foundation. Misstates the witness' prior
23  testimony.
24  A  Any facts --
25     MR. KUROWSKI: Calls for a legal --

### Page 209

1  attorney-client privileged communications as
2  well.
3  A  Any facts I would say are found in the
4  complaint.
5  BY MS. HOOVER:
6  Q  Are you aware that the complaint has
7  numerous allegations regarding CVS' Health Savings
8  Pass program?
9  A  Yes.
10  Q  Do you recall testifying before that the
11  Fund trustees had no knowledge or familiarity with
12  the Health Savings Pass program?
13  A  Yes.
14  Q  So when did the trustees become aware of
15  the facts relating to CVS' Health Savings Pass
16  program that formed the allegations in the
17  complaint?
18  A  I would suggest that that date would be
19  found in the complaint.
20  Q  In general terms, what is the Fund's
21  understanding of the facts that formed the basis
22  of the lawsuit against CVS?
23  A  Those issues would be found in the
24  complaint.
25  Q  Can you articulate what those issues are?

Page 210

1  A  I cannot.
2  Q  Have you read the complaint in this case?
3  A  Yes.
4  Q  Did you understand the allegations in
5  that complaint?
6  A  Yes.
7  Q  But in general terms, the Fund doesn't
8  know the facts that form the basis?
9  A  Any facts, I think, are found in the
10 complaint.
11 Q  And the Fund is unable to articulate, as
12 a general matter, what those facts are?
13 A  That's correct.
14 Q  You stated that in the vote of the Board
15 of Trustees in December 2017, the board authorized
16 adding Caremark as a defendant in this case?
17 A  That's correct.
18 Q  Who participated in that vote?
19 A  The Board of Trustees.
20 Q  Was that vote taken at a normal meeting
21 of the Board of Trustees?
22 A  It was.
23    MR. KUROWSKI:  I will object to questions
24 regarding this vote as outside the scope of
25 the 30(b)(6) examination.

Page 211

1     MS. HOOVER:  For the record, one of the
2  topics was the factual basis for the lawsuits
3  against the defendants in this case.  One of
4  the defendants is Caremark.
5     MR. KUROWSKI:  And the notice of
6  deposition specifically identifies
7  February 2016 as the cutoff.
8     MS. HOOVER:  It identifies that period,
9  to the extent it is not otherwise stated in a
10 request.  And the request clearly relates to
11 the facts against Caremark as a defendant.
12 BY MS. HOOVER:
13 Q  What is the factual basis for the lawsuit
14 against Caremark?
15 A  I believe the factual basis will be
16 found -- would be found in the complaint.
17 Q  When did the Welfare Fund become aware of
18 those facts?
19    MR. KUROWSKI:  Objection, vague.
20 A  I don't know.
21 BY MS. HOOVER:
22 Q  How did the Fund become aware of the
23 facts that form the basis for the lawsuit against
24 Caremark?
25 A  Through Fund counsel.

Page 212

1  Q  Who is Fund counsel?
2  A  Mr. Greg Hose.
3     MR. KUROWSKI:  Mr. Ohm, I'm going to
4  instruct you not to reveal the substance of
5  any communications that you may have had with
6  Fund counsel.
7     MS. HOOVER:  There is no question pending
8  for your objection.  I didn't ask him anything
9  about the substance.
10    I asked him how he became aware of the
11 facts.
12    MR. KUROWSKI:  Statement stands.
13 BY MS. HOOVER:
14 Q  Would Mr. Hose have presented those facts
15 at a meeting of the Board of Trustees?
16    You can answer.
17    MR. KUROWSKI:  Objection, calls for
18 attorney-client privileged communications.
19    To the extent that the question is asking
20 you to reveal the substance of communications
21 that you may have received from Mr. Hose as
22 Fund counsel, I'm going to instruct you not to
23 answer the question.
24    If you can answer the question without
25 revealing the substance of any communications

Page 213

1  that have been provided to the Fund by Fund
2  counsel, you may go ahead.
3     Otherwise, I'm going to instruct you not
4  to answer.
5  BY MS. HOOVER:
6  Q  And for the record, I still haven't asked
7  you about the substance.  I asked you if that
8  communication would have occurred at a meeting of
9  the Board of Trustees.
10 A  I don't know.
11 Q  Were you present when Mr. Hose presented
12 the facts that form the basis for the claims
13 against Caremark?
14 A  I don't know.
15 Q  When the Board of Trustees voted to add
16 Caremark as a defendant, what was the factual
17 basis for their vote?
18 A  The factual basis would be found in the
19 complaint.
20    MR. KUROWSKI:  Objection, vague.
21 Foundation.
22 BY MS. HOOVER:
23 Q  In general terms, can you describe the
24 allegations against Caremark?
25 A  No.

54 (Pages 210 - 213)

|  |  |
|---|---|
| 1  Q  What facts support the claim that CVS<br>2 overcharged the Fund?<br>3       MR. KUROWSKI: Objection, vague.<br>4  Foundation. Calls for a legal conclusion.<br>5   A  Those facts are found in the complaint.<br>6 BY MS. HOOVER:<br>7   Q  What facts support the claim that Express<br>8 Scripts conspired with CVS to overcharge the Fund?<br>9       MR. KUROWSKI: Same objections.<br>10  A  Those facts should be found in the<br>11 complaint.<br>12 BY MS. HOOVER:<br>13  Q  What facts support the claim that<br>14 Caremark conspired with CVS to overcharge the<br>15 Fund?<br>16      MR. KUROWSKI: Same objections.<br>17  A  Those facts should be found in the<br>18 complaint.<br>19 BY MS. HOOVER:<br>20  Q  Do you understand that the information<br>21 contained in the complaint are allegations, not<br>22 facts?<br>23      MR. KUROWSKI: Objection, vague.<br>24  A  No.<br>25<br>Page 214 | 1       MR. KUROWSKI: Objection, vague.<br>2  Foundation.<br>3 BY MS. HOOVER:<br>4   Q  Do you understand that the primary<br>5 allegation against CVS in this case is that it<br>6 should have reported its Health Savings Pass<br>7 prices as its usual and customary prices?<br>8   A  No.<br>9       (Document marked as PWF<br>10      Exhibit No. 22 for identification.)<br>11 BY MS. HOOVER:<br>12  Q  Showing you what I'm marking as<br>13 Exhibit 22 for today's deposition.<br>14      Looking at the first page of this<br>15 document, do you see that it's titled:<br>16 "Proposed First Amended Complaint"?<br>17  A  Yes.<br>18  Q  Do you see above that, that one of the<br>19 case captions contained on this first amended<br>20 complaint is:<br>21      "Plumbers Welfare Fund Local 130 U.A., on<br>22 behalf of itself and all others similarly,<br>23 plaintiff, versus CVS Pharmacy, Inc., Caremark,<br>24 LLC, defendants."<br>25  A  I do see that, yes.<br>Page 216 |
| 1 BY MS. HOOVER:<br>2   Q  In other words, do you understand that<br>3 the information contained in the complaint has not<br>4 been proven?<br>5       MR. KUROWSKI: Objection, vague.<br>6   A  No.<br>7 BY MS. HOOVER:<br>8   Q  Do you understand that CVS and Caremark<br>9 contest the allegations contained in the<br>10 complaint?<br>11  A  Yes.<br>12  Q  Since you're not aware of any facts that<br>13 form the basis for the allegations in the<br>14 complaint, you don't know one way or another<br>15 whether those allegations are true or false.<br>16      MR. KUROWSKI: Objection, vague.<br>17 BY MS. HOOVER:<br>18  Q  Right?<br>19      MR. KUROWSKI: Objection, vague.<br>20  Foundation.<br>21  A  I don't know.<br>22 BY MS. HOOVER:<br>23  Q  As far as you know, the allegations<br>24 against CVS and Caremark could be false. Right?<br>25  A  I don't know.<br>Page 215 | 1   Q  Do you understand that this is the<br>2 complaint that was filed in this case?<br>3   A  That's my understanding.<br>4   Q  I ask you to turn to paragraph 5, page 3.<br>5   A  (Witness complies.)<br>6   Q  I'd ask you to read that to yourself.<br>7   A  (Witness perusing document.)<br>8   Q  If you look -- well, let me just ask you<br>9 again.<br>10      Having read paragraph 5, do you<br>11 understand that the primary allegation against CVS<br>12 is that it should have, but did not, report Health<br>13 Savings Pass prices as its usual and customary<br>14 prices?<br>15      MR. KUROWSKI: Objection, vague.<br>16  Foundation.<br>17  A  Yeah. I don't know that.<br>18 BY MS. HOOVER:<br>19  Q  Looking at the fifth line, starting at<br>20 the end, do you see that this paragraph 5 states:<br>21      "CVS, with the participation of Caremark,<br>22 knowingly and intentionally overcharged plaintiffs<br>23 and private health plans for generic prescription<br>24 drugs by submitting claims for payment that did<br>25 not account for the HSP price in reporting the<br>Page 217 |

55 (Pages 214 - 217)

```
 1       MR. KUROWSKI: You don't have to answer.
 2       THE WITNESS: Okay.
 3   BY MS. HOOVER:
 4    Q   Just looking back at Exhibit 21.
 5       This was the RFP response document.
 6       You just testified that this document was
 7   created by Buck Consultants. Correct?
 8    A   That's correct.
 9    Q   Buck Consultants created this document on
10   behalf of the Plumbers Welfare Fund Local 130.
11   Correct?
12    A   That's correct.
13       MR. KUROWSKI: Objection, vague.
14   Foundation.
15   BY MS. HOOVER:
16    Q   In fact, this was a document related to a
17   request for proposal by the Welfare Fund.
18   Correct?
19       MR. KUROWSKI: Objection, vague.
20   Foundation.
21    A   Yes, that's correct.
22   BY MS. HOOVER:
23    Q   In other words, this is part of the
24   Welfare Fund's request for proposal process.
25   Correct?
                                            Page 326
```

```
 1       MR. KUROWSKI: Objection, vague.
 2   Foundation.
 3    A   Yes.
 4       MS. HOOVER: That's all I have for you,
 5   Mr. Ohm.
 6       MR. KUROWSKI: We'll read and sign.
 7       THE VIDEOGRAPHER: This marks the end of
 8   Media Set 6 and the end of this deposition, at
 9   5:25 p.m.
10       (WITNESS EXCUSED)
                                            Page 327
```

```
 1   STATE OF ILLINOIS )
                      ) SS:
 2   COUNTY OF C O O K )
 3
 4       The within and foregoing deposition of
 5   the aforementioned witness was taken before
 6   MARIA S. WINN, CSR, RPR and CRR, at the place,
 7   date and time aforementioned.
 8       There were present during the taking of
 9   the deposition the previously named counsel.
10       The said witness was first duly sworn and
11   was then examined upon oral interrogatories; the
12   questions and answers were taken down in shorthand
13   by the undersigned, acting as stenographer; and
14   the within and foregoing is a true, accurate and
15   complete record of all of the questions asked of
16   and answers made by the aforementioned witness, at
17   the time and place hereinabove referred to.
18       The signature of the witness was not
19   waived, and the deposition was submitted,
20   pursuant to Rule 30(e) and 32(d)4 of the Rules
21   of Civil Procedure for the United States District
22   Courts, to the deponent per copy of the attached
23   letter.
                                            Page 328
```

```
 1       The undersigned is not interested in the
 2   within case, nor of kin or counsel to any of the
 3   parties.
 4       In witness whereof, I have hereunto set
 5   my hand and seal of office this day, March 14,
 6   2019.
 7
 8
 9       Maria S. Winn
10
11   CSR No. 084-003784 - Expiration Date: May 31, 2019
                                            Page 329
```

83 (Pages 326 - 329)