# EXHIBIT 26



# Transcript of Joseph Zavalishin

**Date:** April 14, 2017
**Case:** Corcoran, et al. -v- CVS Pharmacy, Inc.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

CONFIDENTIAL                                                                                                         CVSSM-0023113

**Page 1**

```
             UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
-------------------------------x
CHRISTOPHER CORCORAN, et al.,  :
          Plaintiffs,          :
     v.                        :    Case No.
CVS PHARMACY, INC.,            :    3:15-cv-03504-YGR
          Defendant.           :
-------------------------------x

       Videotaped Deposition of JOSEPH ZAVALISHIN
                  Schaumburg, Illinois
                  Friday, April 14, 2017
                       10:37 a.m.









Job No.: 140703
Pages: 1 - 154
Reported by:  Melanie L. Humphrey-Sonntag,
              CSR, RDR, CRR, FAPR
```

**Page 2**

```
    Videotaped deposition of JOSEPH ZAVALISHIN, held
at the location of:



       OPTUMRx
       1600 McConnor Parkway
       Third Floor
       Schaumburg, Illinois 60173
       (800) 282-3232



    Pursuant to subpoena before Melanie L. Humphrey-
Sonntag, a Certified Shorthand Reporter, Registered
Diplomate Reporter, Certified Realtime Reporter, and
a Notary Public in and for the State of Illinois.
```

**Page 3**

```
              A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:
     RICHARD LEWIS, ESQUIRE
     HAUSFELD
     1700 K Street, NW
     Suite 650
     Washington, DC 20006
     (202) 540-7200

ON BEHALF OF THE DEFENDANT:
     GRANT A. GEYERMAN, ESQUIRE
     VIVAAN NEHRU, ESQUIRE
     WILLIAMS & CONNOLLY, LLP
     725 Twelfth Street, NW
     Washington, DC 20005
     (202) 434-5000
```

**Page 4**

```
        A P P E A R A N C E S  C O N T I N U E D
ON BEHALF OF THE THIRD PARTY AND WITNESS:
     GARRETT HEENAN, ESQUIRE
     OptumRx
     2300 Main Street
     CA134-1000
     Irvine, California  92614
     (949) 252-4386

ALSO PRESENT:
     STEPHEN GOETHALS, Videographer
```

CONFIDENTIAL                                                   CVSSM-0023114

Page 5

```
            C O N T E N T S
EXAMINATION OF JOSEPH ZAVALISHIN            PAGE
     By Mr. Lewis                             7
     By Mr. Geyerman                        124
     By Mr. Lewis                           146


              E X H I B I T S
          (Attached to transcript.)
PX EXHIBITS                                 PAGE
 Exhibit 780   Deposition Subpoena            6
 Exhibit 781   Zavalishin Declaration,        6
               2/22/17
 Exhibit 783   E-Mail Chain With Attachment 114
 Exhibit 784   E-Mail Chain With Attachment 104
 Exhibit 785   Contract, Aetna PBM and CVS   29

DX EXHIBITS                                 PAGE
 Exhibit 330   CVS Travel Itinerary,        140
               11/13/08

PREVIOUSLY MARKED EXHIBITS                  PAGE
 PX 695        TP Contracts Indexing Form    97
 PX 728        Health Savings Pass           62
               Enrollment Form
```

Page 6

1          PROCEEDINGS
2      (PX Exhibits 780 and 781 marked for
3  identification and attached to the transcript.)
4      THE VIDEOGRAPHER: We are on the record.
5  The time is 10:37.
6      This is the beginning of Disk No. 1 in the
7  videotaped deposition of Joseph Zavalishin, in the
8  matter of Corcoran, et al., versus CVS Pharmacy,
9  Inc., in the United States District Court, Northern
10 District of California, Case No. 3:15-cv-03504-YGR.
11     Today's date is April 14th, 2017. The
12 videographer today is Stephen Goethals, representing
13 Planet Depos. This video deposition is taking place
14 at 1600 McConnor Parkway, Schaumburg, Illinois.
15     Would counsel please voice-identify
16 themselves and state whom they represent.
17     MR. LEWIS: Richard Lewis for the plaintiff.
18     MR. GEYERMAN: Grant Geyerman and Vivaan
19 Nehru from Williams & Connolly for the defendant.
20     MR. HEENAN: And Garrett Heenan appearing on
21 behalf of Third Party Optum RX.
22     THE VIDEOGRAPHER: The court reporter today
23 is Melanie Sonntag, Certified Realtime Reporter,
24 representing Planet Depos.
25     Would the reporter please swear in the

Page 7

1  witness.
2      THE COURT REPORTER: Would you raise your
3  right hand, please.
4      (Witness sworn.)
5      THE COURT REPORTER: Thank you.
6      JOSEPH ZAVALISHIN,
7  having been duly sworn, testified as follows:
8      EXAMINATION BY COUNSEL FOR THE PLAINTIFFS
9  BY MR. LEWIS:
10   Q Good morning, Mr. Zavalishin. Am I
11 pronouncing that correctly?
12   A Zavalishin.
13   Q Zavalishin. Okay.
14     My name is Rich Lewis. I'm a lawyer for the
15 plaintiffs in this case, and I'm going to be taking
16 your deposition this morning. And other counsel may
17 have questions later on in the day.
18     Have you ever had -- have you ever given a
19 deposition before?
20   A Yes, I have.
21   Q About how many times?
22   A Two that I'm aware of.
23   Q All right. And was that related to your
24 employment?
25   A For my employer? It was -- yes.

Page 8

1    Q All right. And can you tell me when the
2  first of those two depositions occurred,
3  approximately?
4    A I'm not sure it was a formal deposition.
5  But I believe I had one -- it was more prep at
6  Walgreens.
7      And then most recently, for Optum RX, it was
8  earlier this year, I believe.
9    Q And can you tell me just generally what the
10 subject of the most recent deposition with
11 Optum RX was?
12   A Yes. It was in relation to the pending
13 acquisition of Rite-Aid by Walgreens.
14   Q All right.
15     In terms of the ground rules for today,
16 probably the same thing as your -- as your prior
17 experience.
18     It's important that each of us listen when
19 the other is talking, and only one of us speak at a
20 time so the court reporter can take everything down.
21 Do you understand that?
22   A Yes.
23   Q And it's important that, if my questions are
24 unclear, you let me know for any reason. If you do
25 answer the question, I'm going to assume that you

CONFIDENTIAL                                              CVSSM-0023115

## 85

1  A  That would have been what's attached in
2  Exhibit A.
3  Q  The -- the writings that we've already
4  discussed today?
5  A  Uh-huh.
6  Q  All right.  Now, in paragraph 9 you also say
7  that you had a general awareness that prices charged
8  by pharmacies like CVS and Walgreens in their
9  membership programs were not being submitted as the
10 pharmacy's U&C price.
11     Do you see that?
12 A  Yes.
13 Q  Other than the writings, what was that
14 general awareness based on?
15 A  Conversations.
16 Q  Conversations with who?
17 A  It would have been with Sharon Edmunds; Tina
18 likely would have been on those calls from the legal
19 side at CVS, as well as Ms. Wingate.
20 Q  What about -- you say that you had a general
21 awareness of pharmacies like CVS and Walgreens.
22 What conversations did you have with anybody at
23 Walgreens about this?
24 A  It would have been similar dialogue of being
25 made aware that they have a program and how it would

## 86

1  be a membership access fee that would afford the
2  discounts being provided to those who enroll.
3  Q  All right.  Specifically when did you have a
4  conversation like that with someone from Walgreens?
5     MR. HEENAN:  At this point -- I know we
6  talked a little bit about Walgreens before the
7  break, and, obviously, Mr. Zavalishin has worked at
8  Walgreens and those points were made.
9     But, you know, I don't know that -- I mean,
10 based on the declaration and the subject of what
11 this deposition is, I think we're going a little bit
12 afield here now about Walgreens.
13    MR. LEWIS:  I just want to ask about what he
14 wrote in paragraph 9 about Walgreens.  That's all.
15 Q  Who did you talk to -- when you make that
16 reference to Walgreens in paragraph 9, who at
17 Walgreens did you speak to and when?
18    MR. GEYERMAN:  He doesn't say in the
19 declaration he spoke to anybody at Walgreens.
20    MR. HEENAN:  It's an Aetna-related
21 paragraph.
22 A  When I say a --
23    MR. HEENAN:  Go ahead.
24 A  (Continuing.) -- "general awareness" --
25 A  THE WITNESS:  I can answer this.

## 87

1     MR. HEENAN:  Okay.
2  A  (Continuing.)  When I say "a general
3  awareness," within the industry at this point in
4  time, what Walmart did was market disruptive, market
5  changing.
6     Wal- -- Walmart came out with an
7  announcement that they would have a set of drugs --
8  $4 for a 30-day fill, $9, $10 -- whatever the exact
9  amount was; I don't recall -- for 90-day fills.
10    And in the retail and pharmacy benefit
11 management space, that was huge.  That was
12 disruptive.  As such, reactionary, many other
13 retailers took actions to also attract
14 price-sensitive shoppers, whether it was the Health
15 Savings Pass at CVS, whether it was the savings
16 club, savings card at Walgreens.  Many regional and
17 local grocers either did the same exact thing of not
18 having a program, in which case it was anybody could
19 just walk in for a $4, $10 pricing, in which case
20 those would have come through as a U&C.
21    Some grocers -- I don't recall by name --
22 may have rolled out a similar program where you had
23 to join and pay a fee to join.  This was
24 transformative in the retail space.
25    And on the payer side of the equation within

## 88

1  pharmacy benefit managers, when you consider the
2  billions of dollars of year -- a year that transact,
3  this had a level of awareness.  Everybody saw it.
4  Everybody knew about it.  Everybody discussed it.
5     And everybody had eyes wide open as to what
6  these programs were, how they functioned, and
7  what -- their long-term impact.
8     So when I say I had a general awareness,
9  that's where it's coming from.  As a consumer
10 walking into a Walgreens, as a consumer walking into
11 a CVS, seeing the commercials on TV or in print,
12 there was a high degree and level of awareness.
13    And as somebody who -- myself -- is highly
14 attuned to the industry, you know these things; you
15 pay attention to them.  And that's why I say I have
16 a good, general level of awareness.
17    I would liken it to somebody who is in, you
18 know, aviation and that's their industry.  And if
19 they, for many years, worked at a -- a United or an
20 American Airlines or a US Air and all of a sudden
21 some low-cost Southwest started to emerge and eat
22 their market share, they would have a general
23 awareness of that business model, would have a
24 general awareness of what's going on.
25    So it was my job, my responsibility, to know

153

1  A  I believe, ultimately, it all reported up to
2  the same legal entity of Aetna, but I don't know in
3  terms of subholding companies, structure. I didn't
4  have visibility into that.
5  Q  What was the name of that -- of that entity
6  at the top that owned both of them?
7  A  I don't recall the exact legal entity. If
8  there's multiple corporations set up in multiple
9  states and -- you would have to go back and explore
10 that. I don't know.
11 Q  Were there any rules in place when you were
12 at Aetna preventing you, as a member of the PBM
13 side, to talk to persons on the health plan side
14 about the definition of "U&C"?
15 A  Not that I recall.
16 Q  Were there any conflicts of interest that
17 you were aware of that would prevent that?
18 A  Not that I recall.
19    MR. LEWIS:  Thank you.
20    Nothing further.
21    MR. GEYERMAN:  Nothing further from us.
22    Thank you very much for your time.
23    THE VIDEOGRAPHER:  Off the record. The time
24 is 1424.
25    (Off the record at 2:24 p.m.)

154

1     CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC
2
3     I, Melanie L. Humphrey-Sonntag, Certified
4  Shorthand Reporter No. 084-004299, CSR, RDR, CRR,
5  CRC, FAPR, and a Notary Public in and for the County
6  of Kane, State of Illinois, the officer before whom
7  the foregoing deposition was taken, do hereby
8  certify that the foregoing transcript is a true and
9  correct record of the testimony given; that said
10 testimony was taken by me stenographically and
11 thereafter reduced to typewriting under my
12 direction; that reading and signing was not
13 requested; and that I am neither counsel for,
14 related to, nor employed by any of the parties to
15 this case and have no interest, financial or
16 otherwise, in its outcome.
17     IN WITNESS WHEREOF, I have hereunto set my
18 hand and affixed my notarial seal this 27th day of
19 April, 2017.
20
21 My commission expires: May 31, 2017
22
23 _____
24 Notary Public in and for the
25 State of Illinois