# EXHIBIT 28

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND and INDIANA CARPENTERS WELFARE FUND,<br><br>         Plaintiffs,<br><br> v.<br><br>CVS HEALTH CORPORATION,<br><br>         Defendant. | Case No. 1:16-cv-00046-S |

**PLAINTIFFS' RESPONSE TO CVS HEALTH CORPORATION'S**
**FIRST SET OF INTERROGATORIES**

Plaintiffs Sheet Metal Workers Local No. 20 Welfare and Benefit Fund and Indiana Carpenters Welfare Fund, and the undersigned counsel, hereby responds to CVS Health Corporation ("CVS"), First Set of Interrogatories to Plaintiffs ("Interrogatories").

**OBJECTIONS & RESPONSES**

**INTERROGATORY NO. 1:**

Identify all facts that you were aware of at the time you filed the Complaint that support your claim that "[t]he customers who purchase prescriptions outside of the HSP program and pay [CVS's] retail price make up less than 50 percent of CVS's cash business and less than three percent of CVS's total prescription business," as alleged in paragraph 29 of the Complaint.

**RESPONSE:**

Plaintiffs object to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome generally and specifically to the extent it seeks to "identify all" facts without limitation and uses the phrase "aware of." Plaintiffs further object to this interrogatory to the extent it is duplicative of other interrogatories propounded by Defendant or is equally available to Defendant independently of Plaintiffs. Plaintiffs note that discovery is ongoing, and reserve the right to amend this response to the extent that additional discovery so indicates. To the extent Defendant is requesting information that includes expert opinion, Plaintiffs object to this interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct this response, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports as provided in the schedule entered by the Court. Plaintiffs object to this interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Plaintiffs' inadvertent disclosure of any privileged or

protected information is neither intended as, nor shall be deemed to be, a waiver of privilege, and Plaintiffs expressly reserve the right to object to the introduction or other use of any privileged information that may be inadvertently disclosed.

Without waiving any of the General or Specific responses and objections, Plaintiffs respond as follows:

Based on their review of their own documents obtained to date and through publicly available information, Plaintiffs provide the following non-exclusive, non-privileged example from paragraph 68 of the *Corcoran* Second Amended Complaint (P_001231-1288): "The customers who purchase prescriptions outside of the HSP program and pay the retail price make up less than 50 percent of CVS's cash business and less than three percent of CVS's total prescription business."

**INTERROGATORY NO. 2:**

Identify all facts that you are presently aware of that support your claim that "[t]he customers who purchase prescriptions outside of the HSP program and pay [CVS's] retail price make up less than 50 percent of CVS's cash business and less than three percent of CVS's total prescription business," as alleged in paragraph 29 of the Complaint.

**RESPONSE:**

Plaintiffs object to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome generally and specifically to the extent it seeks to "identify all" facts without limitation and uses the phrase "aware of." Plaintiffs further object to this interrogatory to the extent it is duplicative of other interrogatories propounded by Defendant or is equally available to Defendant independently of Plaintiffs. Plaintiffs note that discovery is ongoing, and reserve the right to amend this response to the extent that additional discovery so indicates. To the

extent Defendant is requesting information that includes expert opinion, Plaintiffs object to this interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct this response, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports as provided in the schedule entered by the Court.  Plaintiffs object to this interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Plaintiffs' inadvertent disclosure of any privileged or protected information is neither intended as, nor shall be deemed to be, a waiver of privilege, and Plaintiffs expressly reserve the right to object to the introduction or other use of any privileged information that may be inadvertently disclosed.

Without waiving any of the General or Specific responses and objections, Plaintiff responds as follows:

This interrogatory No. 2 is identical to interrogatory No. 1.  *See* Response to Interrogatory 1.

**INTERROGATORY NO. 3:**

Identify all facts that you are presently aware of that support your claim that CVS Health Corporation, as opposed to one of its subsidiaries, "created" the HSP program, operated pharmacies, submitted prescription claims to Third-Party Payors, or received reimbursements for those claims from Third-Party Payors, as alleged in paragraphs 3, 9, 13, 14, and 17 of the Complaint.

**RESPONSE:**

Plaintiffs object to this interrogatory as compound, vague, ambiguous, overly broad, and unduly burdensome generally and specifically to the extent it seeks to "identify all" facts without

limitation and uses the phrases "aware of," and "as opposed to one of its subsidiaries." Plaintiffs object to this interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Plaintiffs' inadvertent disclosure of any privileged or protected information is neither intended as, nor shall be deemed to be, a waiver of privilege, and Plaintiffs expressly reserve the right to object to the introduction or other use of any privileged information that may be inadvertently disclosed. Plaintiffs further object to this interrogatory to the extent it is equally available to Defendant independently of Plaintiffs. Plaintiffs note that discovery is ongoing, and reserve the right to amend this response to the extent that additional discovery so indicates. To the extent Defendant is requesting information that includes expert opinion, Plaintiffs object to this interrogatory as premature and expressly reserve the right to supplement, clarify, revise, or correct this response, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports as provided in the schedule entered by the Court.

Without waiving any of the General or Specific responses and objections, Plaintiffs respond as follows:

Based on their review of their own documents obtained to date and through publicly available information, Plaintiffs provide the following non-exclusive, non-privileged examples of facts from *Change to Win* Report (P_000025-55), *Corcoran* Second Amended Complaint (P_001231-1288), *U.S. v. CVS Caremark Corp*. July 29, 2015 Order (P_001062-1081), Medco Health Pharmacy Services Manual (P_000957-1061), and MedImpact Pharmacy Manual (P_000682-956), relating to CVS's HSP program, CVS's pharmacies, CVS submitting

prescription claims to TPPs or received reimbursements for those claims from TPPs as alleged in paragraphs 3, 9, 13, 14, and 17 of the Complaint:

- "Meanwhile, CVS pharmacy's generics discount program, the Health Savings Pass (HSP), is open to any customer who signs up and pays a $10 annual fee." *See* (P_000025-55) (*Change to Win* Report, pg. 2).

- "Open to all, the CVS HSP program offers easy online or in-store enrollment." *See* (P_000025-55) (*Change to Win* Report, pg. 2).

- "Any person who enrolls in the generic discount program offered at CVS's retail pharmacies can purchase hundreds of prescription drugs for significantly lower prices than CVS Caremark charges the government and federal employees in the FEP for those same drugs, even though CVS Caremark is paid to reduce drug costs for the government and federal employees." *See* (P_000025-55) (*Change to Win* Report, pg. 1).

- "This report compares the $9.99 price for generic drugs under the CVS HSP program with the total price for the same drugs purchased at CVS retail pharmacies under the FEP. This comparison shows that for a vast majority of drugs, FEP participants as well as the underwriters of the health plan – U.S. taxpayers – are not getting the best deal available from CVS Caremark (Figure 1)." *See* (P_000025-55) (*Change to Win*, pg. 2).

- "CVS commonly submits electronic claims for payment to third-party payors when it fills prescriptions. In submitting electronic claims for payment, CVS is required to state accurately its usual and customary price for every dispensing event, in accordance with the National Council for Prescription Drug Program ("NCPDP") requirements. But for years, CVS has knowingly and intentionally submitted false and artificially inflated usual and customary prices for generic drugs to third-party payors. Beginning in 2008, CVS orchestrated and carried out a massive fraud that resulted in substantial ill-gotten gains, and substantial harm to Plaintiffs and the members of the Classes they represent. CVS created the "Health Savings Pass" ("HSP") program—the centerpiece of its fraud—as an integral vehicle for overcharging third-party payors and plan participants for covered drugs. The HSP formulary includes long-term maintenance medications, which, in many instances, are prescribed to elderly and disabled patients on a regular basis." *See* (P_001231-1288) (Second Amended Complaint, *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 4:15-cv-03504-YGR (N.D. Cal., Dkt. No. 49), at ¶ 11).

- "CVS was unwilling to match the deep discounts on generic drugs provided to customers by big-box retailers. So, in response to lower prices and increased competition for cash customers, CVS created a custom-branded loyalty program targeted at cash customers and other price-sensitive customers." *See* (P_001231-1288) (Second Amended Complaint, *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 4:15-cv-03504-YGR (N.D. Cal., Dkt. No. 49), at ¶ 58).

- 6 -

- "Through the HSP program, CVS implemented a scheme to create a new category of cash customers, in order to avoid lowering prices charged to third-party payors and their plan participants. CVS designed the HSP to split CVS's cash business, formerly consisting solely of people who pay the cash price (the usual and customary price), into two segments: customers who pay the retail price, and customers who pay the HSP price." *See* (P_001231-1288) (Second Amended Complaint, *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 4:15-cv-03504-YGR (N.D. Cal., Dkt. No. 49), at ¶ 67. *See also* ¶¶ 59-63).

- "The HSP program has served a twofold purpose for CVS. Not only was the HSP program a means by which CVS could maintain and increase its market share by fending off discounted prices from its competitors, but importantly, CVS also intended that the HSP program would serve as a mechanism to hide CVS's true usual and customary prices from third-party payors. By submitting false and inflated usual and customary prices to third-party payors, CVS knowingly and wrongfully overcharged plan participants copayment amounts that often exceeded the HSP drug prices available to the general public for the same drugs. In essence, the unlawful scheme that CVS designed allowed CVS to have its cake and eat it too: CVS could maintain and increase its cash-paying customer base while also maintaining higher reimbursement payments from third-party payors and higher copayments from plan participants who filled their prescriptions at CVS pharmacies." *See* (P_001231-1288) (Second Amended Complaint, *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 4:15-cv-03504-YGR (N.D. Cal., Dkt. No. 49), at ¶ 14).

- "Adjudication is the automated process by which CVS submits prescription claims electronically in real time to the third-party payor (or the third-party payor's agent). During adjudication, the claim is verified and/or confirmed for patient eligibility for insurance or another prescription drug benefit. Through this process, using the drug price information from CVS, the third-party payor sets the reimbursement amount and any applicable copayment or coinsurance." *See* (P_001231-1288) (Second Amended Complaint, *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 4:15-cv-03504-YGR (N.D. Cal., Dkt. No. 49), at ¶ 48).

- "Based on the data reported by CVS, third-party payors identify the copayment amount that the patient must pay to CVS in a specific transaction. The copayment amount is a portion of the total drug price and cannot exceed the drug price. The remainder of the drug price is reimbursed to the pharmacy by the third-party payor." *See* (P_001231-1288) (Second Amended Complaint, *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 4:15-cv-03504-YGR (N.D. Cal., Dkt. No. 49), at ¶ 53. *See also* ¶¶ 64-80).

- "On November 9, 2008, CVS began a fee-based generic discount program – the Health Savings Pass ("HSP")." *See* (P_001062-1081) (*U.S. v. CVS Caremark Corp.*, 1:11-cv-11398-DJC, Memorandum & Order (July 29, 2015), at 6. *See also* 18).

- "Medco Health reimburses Provider Pharmacies every two weeks according to the payment schedule included with this Manual." *See* (P_000957-1061) (Medco Health Pharmacy Services Manual, at p. i).

- "Pharmacy must accept "lesser of" pricing, that is; the lower of usual and customary, MAC, or network reimbursement rate pricing." *See* (P_000957-1061) (Medco Health Pharmacy Services Manual, at p. 4.2).

- "In no case shall reimbursement to Member Pharmacy exceed Member Pharmacy's Usual and Customary price." *See* (P_000682-956) (MedImpact Pharmacy Manual, at p. 9. *See also* 22, 34).

**INTERROGATORY NO. 4:**

Identify the date upon which you "recently" discovered the alleged "scheme" or "unlawful conduct" as alleged in paragraphs 51, 52, and 59 of the complaint.

**RESPONSE:**

Plaintiffs object to this interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Plaintiffs' inadvertent disclosure of any privileged or protected information is neither intended as, nor shall be deemed to be, a waiver of privilege, and Plaintiffs expressly reserve the right to object to the introduction or other use of any privileged information that may be inadvertently disclosed. As discovery is ongoing, Plaintiffs reserve the right to amend this response when and if additional discovery so indicates. To the extent Defendant is requesting information that includes expert opinion, Plaintiffs object to this interrogatory as premature and expressly reserve the right to supplement, clarify, revise, or correct this response, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports as provided in the schedule entered by the Court.

Without waiving any of the General or Specific responses and objections, Plaintiffs respond as follows:

Plaintiffs have alleged and currently believe that they did not discover CVS's unlawful conduct until shortly before filing the Complaint.

**INTERROGATORY NO. 5:**

Identify all facts and circumstances that caused you to discover the "scheme" or "unlawful conduct," including the person or persons who "discovered" the "scheme," on the date identified in response in Interrogatory No. 4.

**RESPONSE:**

Plaintiffs object to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome generally and specifically to the extent it seeks "all" facts without limitation and uses the phrase "caused you to discover." Plaintiffs object to this interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Plaintiffs' inadvertent disclosure of any privileged or protected information is neither intended as, nor shall be deemed to be, a waiver of privilege, and Plaintiffs expressly reserve the right to object to the introduction or other use of any privileged information that may be inadvertently disclosed. Plaintiffs note that discovery is ongoing, and reserve the right to amend this response to the extent that additional discovery so indicates. To the extent Defendant is requesting information that includes expert opinion, Plaintiffs object to this interrogatory as premature and expressly reserve the right to supplement, clarify, revise, or correct this response, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports as provided in the schedule entered by the Court.

Without waiving any of the General or Specific responses and objections, Plaintiffs respond as follows:

Plaintiffs have alleged and currently believe that they did not discover CVS's unlawful scheme until shortly before filing the Complaint. Plaintiffs' attorneys aided their discovery of CVS's unlawful scheme and such communications are privileged.

**INTERROGATORY NO. 6:**

Identify each and every Pharmacy Benefit Manager ("PBM") that administered your prescription drug program from November 9, 2008 to the present, and for each PBM identified, state the date range for which you contracted with them.

**RESPONSE:**

Plaintiffs note that discovery is ongoing, and reserves the right to amend this response to the extent that additional discovery so indicates.

Without waiving any of the General or Specific responses and objections, Plaintiffs respond as follows:

Caremark PCS has been the PBM that has administered Sheet Metal Workers Local No. 20's prescription drug program from November 9, 2008 to the present.

Medco Health Solutions is the PBM that has administered Indiana Carpenter's prescription drug program as of November 9, 2008. In 2012, Medco was bought by Express Scripts which continues to administer the prescription drug program for Indiana Carpenters.

**INTERROGATORY NO. 7:**

Identify any and all contracts between you and CVS Pharmacy, Inc. that were in effect at any time from November 9, 2008 to the present.

**RESPONSE:**

Plaintiffs object to this interrogatory to the extent it seeks information or documents neither relevant to a claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any of the General or Specific responses and objections, Plaintiffs respond as follows:

Plaintiffs were not party to any contract with CVS Pharmacy, Inc. during the period November 9, 2008 to the present.

Dated: December 22, 2016

Respectfully submitted,

By: */s/ Steve W. Berman*
    Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Stephen M. Prignano (3649)
MCINTYRE TATE LLP
321 South Main Street, Suite 400
Providence, Rhode Island 02903
Tel: (401) 351-7700 Ext. 227
Fax: (401) 331-6095
Email: smp@mtlesq.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Fax: (708) 628-4950
Email: beth@hbsslaw.com

            William Riley
            RILEY WILLIAMS & PIATT, LLC
            Hammond Block Building
            301 Massachusetts Avenue
            Indianapolis, Indiana  46204
            Tel: (317) 633-5270
            Fax: (317) 426-3348

## **CERTIFICATE OF SERVICE**

On December 22, 2016, I served the foregoing document described as: **PLAINTIFFS' RESPONSE TO CVS HEALTH CORPORATION'S FIRST SET OF INTERROGATORIES** by electronic mail on the following person(s):

Robert C. Corrente
WHELAN, CORRENTE, KINDER & SIKET LLP
100 Westminster Street; Suite 710
Providence, RI 02903
rcorrente@whelancorrente.com

Enu Mainigi
Grant A. Geyerman
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, D.C. 20005
emainigi@wc.com
ggeyerman@wc.com

                                                          */s/ Steve W. Berman*
                                                          Steve W. Berman