# EXHIBIT 41



# PLANET DEPOS
## We make it >> happen.

# Transcript of William Strein

**Date:** December 12, 2016

**Case:** Corcoran, et al. -v- CVS Pharmacy, Inc.

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: www.planetdepos.com

Worldwide Court Reporting | Interpretation | Trial Services

CONFIDENTIAL

CVSSM-0018919

```
                                                    1
 1  UNITED STATES DISTRICT COURT
 2  NORTHERN DISTRICT OF CALIFORNIA
    ------------------------------------------X
 3  CHRISTOPHER CORCORAN, et al.,
 4              Plaintiffs,
 5     -against-
 6  CVS PHARMACY, INC.,
 7              Defendant.
 8  Case No.: 3:15-cv-03504-YGR
    ------------------------------------------X
 9
10              101 Park Avenue
                New York, New York
11
                December 12, 2016
12              1:37 p.m.
13
14       DEPOSITION of WILLIAM STREIN, before
15  Sadie L. Herbert, a RPR and Notary Public
16  of the States of New York and New Jersey.
```

```
                                                    2
 1  A P P E A R A N C E S:
 2
 3  HAUSFELD
 4  ON BEHALF OF PLAINTIFFS:
 5       1700 K Street N.W.
 6       Suite 650
 7       Washington, DC  20006
 8  BY:  RICHARD LEWIS, ESQ.
 9       Phone 202.540.7200
10       Rlewis@hausfeld.com
11
12
13  WILLIAMS & CONNOLLY LLP
14  ON BEHALF OF DEFENDANT:
15       725 Twelfth Street, N.W.
16       Washington, DC  20005
17  BY:  ENU MAINIGI, ESQ.
18       COLLEEN MCNAMARA, ESQ.
19       Phone 202.434.5186
20       Emainigi@wc.com
21       Cmcnamara@wc.com
```

```
                                                    3
 1  A P P E A R A N C E S: (Cont'd)
 2
 3  MORGAN LEWIS & BOCKIUS LLP
 4  ON BEHALF OF WITNESS:
 5       1701 Market Street
 6       Philadelphia, Pennsylvania  19103
 7  BY:  ERIC W. SITARCHUK, ESQ.
 8       Phone 215.963.5840
 9       Eric.sitarchuk@morganlewis.com
10
11
12  ALSO PRESENT:
13       CHARLES BOWMAN, Videographer
14       ALLISON STOLL, Express Scripts (via
15       telephonic conference)
```

```
                                                    4
 1  ----------------- I N D E X ------------------
 2  WITNESS          EXAMINATION BY        PAGE
 3  WILLIAM STREIN   MR. LEWIS             7, 152
 4                   MS. MAINIGI           144
 5                   MR. SITARCHUK         162
 6
 7
 8  ------------ DIRECTION NOT TO ANSWER ------------
 9  PAGE:    12   What did Allison say?
10          16   During the time you were first
11               contacted in May, up until the
12               time you signed the declaration,
13               did someone ask you if the CVS HSP
14               price was considered a cash price
15               during the time you were vice
16               president at Medco, from 2008 to
17               2012?
18          17   And did you go over any documents
19               on that call?
20
21
22  --------------- E X H I B I T S ---------------
23  PLAINTIFF      DESCRIPTION            FOR I.D.
24  Exhibit 660    Subpoena                  6
```

### 117

```
 1  charging routinely the membership fee was -- you
 2  accepted it as good faith?
 3        MS. MAINIGI:  Objection.
 4   A  Yeah, I think the company believed that
 5  if they attested as -- as themselves being a
 6  public company, that they would hold true to
 7  their word.
 8   Q  But you took their word for it?
 9        MR. SITARCHUK:  Objection.
10        MS. MAINIGI:  Objection.
11   A  I didn't personally.
12   Q  Medco took their word for it?
13        MS. MAINIGI:  Objection.
14        MR. SITARCHUK:  Objection.
15   A  I think Medco believed that it was
16  being done, yes, it was --
17   Q  Did Medco have any data, statistical
18  data verifying that CVS routinely, every year,
19  collected membership fees from the members of
20  the HSP program?
21        MS. MAINIGI:  Objection to form.
22   A  No, and we had no evidence to the
23  contrary.
24   Q  Did you ask for the data from CVS?
25   A  No.
```

### 118

```
 1   Q  You didn't even ask for it?
 2        MR. SITARCHUK:  Objection.
 3   A  I didn't ask for it, no.
 4   Q  Did anybody at Medco ever ask for it?
 5   A  I do not know.
 6        MS. MAINIGI:  Objection.
 7   Q  Do you have any idea -- well, who was
 8  in charge of finding out, when you made this
 9  decision in Paragraph 9, whether the fee was
10  enforced?
11   A  I don't know that anybody was charged
12  with that as part of their job description.
13   Q  Did anybody care?
14        MS. MAINIGI:  Objection.
15        MR. SITARCHUK:  Objection.
16   A  My impression from the discussions in
17  the staff meeting is yes, people believed that
18  this was part of the responsibility of these
19  plans, when they say they're going to collect
20  the money, they do so.
21   Q  Other than believing CVS, did Medco
22  take any action whatsoever to verify that the
23  fee was routinely charged?
24        MS. MAINIGI:  Objection.
25   A  Any action whatsoever?
```

### 119

```
 1   Q  Correct.
 2   A  That's fairly universal.
 3   Q  Yes.
 4   A  Yeah, I don't know of any.
 5   Q  Now, you say at the bottom of your
 6  affidavit -- of your declaration in Paragraph 13
 7  that you made another determination in addition
 8  to the one you made in Paragraph 9, and I'll
 9  quote, you said, "Under this definition, Medco
10  did not consider membership program prices to be
11  applicable discounts to cash customers because
12  pharmacies with a membership program required
13  customers to pay a membership fee before they
14  could access the program's special pricing."
15       Do you see that?
16   A  Yes, I do.
17   Q  Now, the U&C definition in the manual
18  uses the term "applicable discounts"; correct?
19   A  In -- in the 2009 to '12, yes.
20   Q  But the manual doesn't say anything
21  during that time frame about whether an
22  applicable discount includes membership fee
23  programs; correct?
24   A  I don't see it there, no.
25   Q  Is there any document at Medco that
```

### 120

```
 1  documents the decision that applicable discounts
 2  does not include membership fee programs?
 3   A  I'm not aware of any.
 4   Q  When you say in Paragraph 13, "...Medco
 5  did not consider membership program prices to be
 6  applicable discounts," what was the basis of
 7  that decision?
 8   A  Again, it goes back to the fact that
 9  the members -- the -- the pharmacy-based
10  membership programs represented a subset of --
11  of our beneficiaries and others that was
12  separate and distinct from the benefit that we
13  administered.
14       And if those members -- the pharmacy
15  members who happened to be our beneficiaries,
16  not take advantage of that, that was their right
17  to do so.
18       So it was a separate and distinct
19  cohort, outside of our benefit plans that we
20  administered.
21   Q  You understand that if the HSP price
22  was included in applicable discounts, that that
23  would drive down the U&C that CVS would have to
24  report; correct?
25        MS. MAINIGI:  Objection.
```

CONFIDENTIAL

CVSSM-0018949

```
                                              165
1
2   STATE OF NEW YORK    )
3                        ) ss:
4   COUNTY OF NEW YORK   )
5
6       I, SADIE L. HERBERT, a Registered
7   Professional Reporter and Notary Public, do
8   hereby certify:
9       That WILLIAM STREIN the witness
10  whose deposition is hereinbefore set forth, was
11  duly sworn by me and that such deposition is a
12  true record of the testimony given by such
13  witness.
14      No witness read and sign was
15  requested.
16      I further certify that I am not
17  related to any of the parties to this action by
18  blood or marriage; and that I am in no way
19  interested in the outcome of this matter.
20      IN WITNESS WHEREOF, I have hereunto
21  set my hand this 20th day of December 2016.
22
23  [signature: Sadie Herbert]
    _____
24  SADIE L. HERBERT
```

CONFIDENTIAL

CVSSM-0018961