IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND, and INDIANA CARPENTERS WELFARE FUND, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>CVS PHARMACY, INC. and CAREMARK, L.L.C.,<br><br>      Defendants. | Case No. 1:16-cv-00046-S |
| PLUMBERS WELFARE FUND, LOCAL 130, U.A., on behalf of itself and all others similarly,<br><br>      Plaintiff,<br><br> v.<br><br>CVS PHARMACY, INC. and CAREMARK, L.L.C.,<br><br>      Defendants. | Case No. 1:16-cv-00447-S |

**DECLARATION OF JENNIFER FOUNTAIN CONNOLLY IN SUPPORT OF PLAINTIFFS' MOTION FOR STATUS CONFERENCE, ORDER EXTENDING CLASS CERTIFICATION DEADLINE AND PROTECTIVE ORDER STAYING PBM DEPOSITIONS <u>UNTIL DOCUMENT DISCOVERY IS SUBSTANTIALLY COMPLETED</u>**

I, Jennifer Fountain Connolly, declare and state as follows:

1. I am a partner at the law firm of Hagens Berman Sobol Shapiro LLP and am admitted *pro hac vice* in these matters. I submit this Declaration in Support of Plaintiffs' Motion for Status Conference, Order Extending Class Certification Deadline and Protective Order Staying PBM Depositions Until Document Discovery is Substantially Completed. The matters

- 2 –

stated herein are true to the best of my personal knowledge and, if called upon to testify thereto, I would and could competently do so.

2. Attached as Exhibit A is a true and correct copy of Plaintiffs' First Set of Requests for Production of Documents to Defendant Caremark, L.L.C., dated May 15, 2018.

3. Attached as Exhibit B is a true and correct copy of Plaintiffs' First Set of Interrogatories to Defendant Caremark, L.L.C., dated June 5, 2018.

4. Attached as Exhibit C is a true and correct copy of Defendant Caremark, L.L.C.'s Responses to Plaintiffs' First Set of Requests for Production, dated June 14, 2018.

5. Attached as Exhibit D is a true and correct copy of Defendant Caremark, L.L.C.'s Response to Plaintiffs' First Set of Interrogatories, dated July 9, 2018.

6. Attached as Exhibit E is a true and correct copy of a May 15, 2018 letter I wrote to Caremark's counsel.

7. Attached as Exhibit F is a true and correct copy of a May 25, 2018 letter to me from Kylie Hoover.

8. Attached as Exhibit G is a true and correct copy of a May 31, 2018 letter I wrote to Kylie Hoover.

9. Attached as Exhibit H is a true and correct copy of a June 26, 2018 email I wrote to Kylie Hoover.

10. Attached as Exhibit I is a true and correct copy of a June 27, 2018 letter to me from Kylie Hoover.

11. Attached as Exhibit J is a true and correct copy of a June 27, 2018 email I wrote to Kylie Hoover.

12. Attached as Exhibit K is a true and correct copy of a June 29, 2018 email to me from Kylie Hoover without the attached production. These are the only documents Caremark has produced since June 5, the day the Amended Scheduling Order was entered.

13. Attached as Exhibit L is a July 16, 2018 email to me from Kylie Hoover.

14. Attached as Exhibit M is a true and correct copy of a July 17, 2018 letter I wrote to Kylie Hoover.

15. Attached as Exhibit N is a July 18, 2018 letter to me from Kylie Hoover purporting to produce Sheet Metal's claims data.

16. Attached as Exhibit O is a true and correct copy of a June 15, 2018 letter to me from Bob Belden purporting to produce documents on behalf of Defendant CVS Pharmacy, Inc.

17. Attached as Exhibit P is a true and correct copy of Plaintiffs' Notice of Subpoenas to Matthew G. Malloy.

18. Attached as Exhibit Q is a true and correct copy of CVS Pharmacy, Inc.'s Response to Plaintiffs' Second Set of Interrogatories.

19. Attached as Exhibit R is a true and correct copy of a June 8, 2018 email I wrote to Caremark's counsel.

20. Attached as Exhibit S is a true and correct copy of a June 25, 2018 email I wrote to William Burke attaching proposed revisions to the protective order(s) in these actions. These proposed revisions are not attached.

21. Attached as Exhibit T is a true and correct copy of a July 2, 2018 email to me from William Burke.

22. Attached as Exhibit U is a true and correct copy of a July 6, 2018 email I wrote to William Burke.

23. Attached as Exhibit V is a true and correct copy of a July 8, 2018 email to me from William Burke.

24. The last email I received regarding the negotiation of the Attorneys' Eyes Only provision of the protective order was a July 18, 2018 email from William Burke. Yesterday I spoke with Express Scripts' counsel by telephone and he informed me that he planned to propose a rider to the protective order to be executed by Caremark's in-house counsel. I received that draft this morning. ScriptSave has refused to agree to any proposed revisions to the protective order until and unless the scope of its production is known. MedImpact and OptumRx both agreed to Caremark's July 8, 2018 proposal in Exhibit V, subject to further negotiations initiated by other PBMs.

25. All three third-party PBM recipients and ScriptSave have told me that until both the parties and third-parties reach agreement on an amended protective order, they will not produce any documents to Plaintiffs.

26. Beginning in June 2018, Plaintiffs have had multiple telephonic meet-and-confers and have exchanged several letters with Express Scripts (including Medco), MedImpact, OptumRx and ScriptSave. In all cases, Plaintiffs are awaiting responses to various issues from each of those third parties.

27. Attached as group Exhibit W are true and correct copies of the subpoenas *duces tecum* served on: the National Council on Prescription Drug Programs (NCPDP), the National Association of Chain Drug Stores (NACDS), the National Community Pharmacists Association (NCPA), the Pharmacy Benefit Management Institute (PBMI), Pharmaceutical Care Management Association (PCMA) and the Academy of Managed Care Pharmacy. With the

- 4 –

exception of the Academy of Managed Care Pharmacy, which was recently served, these third parties have agreed to produce documents by no later than mid-August.

28.   Attached as Exhibit X is a true and correct copy of Defendants' July 20, 2018 Notice of Subpoenas.  To reduce the amount of paper submitted, Plaintiffs have removed the protective orders attached to each of the four subpoenas.  The depositions noticed under Rule 30(b)(6) listed the following topics:

- Your contracts and business arrangements with CVS regarding prescription drug transactions, including the CVS-[PBM] Contract and Your Network Provider Manual.

- Your policies concerning whether prices in Generic Drug Programs and/or Membership Programs are considered "usual and customary" prices, including (a) the circumstances of how and when those policies were adopted; (b) the role, if any, other PBMs' policies on Generic Drug Programs and/or Membership Programs played in Express Scripts' adoption of its policies; and (c) communications, if any, You have had with other PBMs concerning the substance of Your policies.

- Communications with CVS regarding the Health Savings Pass program and whether that program's price was required to be submitted as CVS's U&C price.

- Your communications with clients regarding Membership Programs, including communications with Indiana Carpenters, Plumbers, and/or their consultants.

- Your contracts with clients produced in response to CVS's document subpoena.

- The transaction data You produce in response to Plaintiffs' document subpoena.

- The total annual number of clients for which you have provided pharmacy benefit management services from 2008–2016.

- The concept of Generic Discount Guarantees, including the definition, operation, management, and prevalence of such guarantees in Your contracts with clients.

- The concept of spread/traditional pricing versus pass-through/transparent pricing, including the definition, operation, management, and prevalence of those concepts in Your contracts with clients.

- The concept of maximum allowable cost ("MAC") lists, including the definition, operation, management, and prevalence of such lists in Your contracts with clients.

29. In addition, for certain PBMs who provided pharmacy benefit services to the named plaintiffs during the class period, there were additional deposition topics related to those clients. For example, Defendants asked Express Scripts to produce a witness regarding:

- Your contracts and business arrangements with Indiana Carpenters for the provision of pharmacy benefit management services, including the Integrated Prescription Drug Program Master Agreement between the United Brotherhood of Carpenters and Joiners of America and Medco Health Solutions, Inc. ("Medco"); the Trust Participation Agreement between Indiana Carpenters and Medco; and Your Network Provider Manual. (Topic No. 5)

- Your contracts and business arrangements with Plumbers for the provision of pharmacy benefit management services, including the Prescription Drug Program Agreement; the Pharmacy Benefit Management Agreement; and Your Network Provider Manual. (Topic No. 6)

- Whether a pharmacy's prices from a Membership Program fall within the pricing to which Indiana Carpenters and/or Plumbers are owed under your and/or Medco's above-referenced contracts with those clients. (Topic No. 7)

- Whether Your contracts and business arrangements with Indiana Carpenters and/or Plumbers imposed on You a duty to disclose the substance of your policies concerning Generic Drug Programs and/or Membership Programs and "usual and customary" pricing. (Topic No. 8)

Defendants similarly asked Medco to produce a witness regarding:

- Your contracts and business arrangements with Indiana Carpenters for the provision of pharmacy benefit management services, including the Integrated Prescription Drug Program Master Agreement with the United Brotherhood of Carpenters and Joiners of America; the Trust Participation Agreement with Indiana Carpenters; and Your Network Provider Manual. (Request No. 5)

- Whether a pharmacy's prices from a Membership Program fall within the pricing to which Indiana Carpenters is owed under your above-referenced contracts with Indiana Carpenters. (Request No. 6)

- Whether Your contracts and business arrangements with Indiana Carpenters imposed on You a duty to disclose the substance of your policies and procedures concerning Generic Drug Programs and/or Membership Programs and "usual and customary" pricing. (Request No. 7)

30. The subpoenas attached to Exhibit X also request that the PBMs produce certain documents:

- Documents sufficient to show Your policies concerning whether prices in Generic Drug Programs and/or Membership Programs are considered "usual and customary" prices.

- Communications with Your clients regarding Membership Programs, including communications with [the named plaintiffs], and/or their consultants.

- The contracts with Your ten largest PBM clients during the period 2008–2016.

- Documents sufficient to show, from 2008–2016, the prevalence of (a) Generic Discount Guarantees in Your contracts with clients and (b) the relative prevalence of Generic Discount Guarantees that include versus exclude claims adjudicating at the pharmacy's "usual and customary" price.

- Documents sufficient to show the relative prevalence of spread/traditional pricing versus pass-through/transparent pricing in Your contracts with clients from 2008–2016.

In addition, Defendants asked the PBMs which had provided pharmacy benefit services to any of the three named plaintiffs during the class period to provide documents specifically related to those clients. For example, Defendants asked Express Scripts to produce:

- The Integrated Prescription Drug Program Master Agreement between the United Brotherhood of Carpenters and Joiners of America and Medco Health Solutions, Inc.; the Trust Participation Agreement between Indiana Carpenters and Medco; and any amendments thereto. (Request No. 3)

- The Prescription Drug Program Agreement with Plumbers; the Pharmacy Benefit Management Agreement with Plumbers. (Request No. 4)

- Documents sufficient to show Indiana Carpenter's (a) total annual payments made under the Integrated Prescription Drug Program Master Agreement between the United Brotherhood of Carpenters and Joiners of America and Medco and the Trust Participation Agreement between Indiana Carpenters and Medco, (b) whether Indiana Carpenters' payments fell inside or outside of any Generic Discount Guarantees in the contract, and (c) the amounts of any reconciliation payments made to or by Indiana Carpenters as a result of any Generic Discount Guarantee. (Request No. 5)

- Documents sufficient to show Plumbers' (a) total annual payments made under the Prescription Drug Program Agreement or the Pharmacy Benefit Management Agreement, (b) whether Indiana Carpenters' payments fell inside or outside of any Generic Discount Guarantees in the contract, and (c) the amounts of any reconciliation payments made to or by Indiana Carpenters as a result of any Generic Discount Guarantees. (Request No. 6)

- Documents sufficient to show any and all plan designs of the prescription plans offered by Indiana Carpenters from 2008–2016. (Request No. 7)

- Documents sufficient to show any and all plan designs of the prescription plans offered by Plumbers from 2008–2016. (Request No. 8)

Defendants similarly asked Medco to produce:

- The Integrated Prescription Drug Program Master Agreement with the United Brotherhood of Carpenters and Joiners of America; the Trust Participation Agreement with Indiana Carpenters; and any amendments thereto. (Request No. 3)

- Documents sufficient to show Indiana Carpenter's (a) total annual payments made under the Integrated Prescription Drug Program Master Agreement and the Trust Participation Agreement, (b) whether Indiana Carpenters' payments fell inside or outside of any Generic Discount Guarantees in the contract, and (c) the amounts of any reconciliation payments made to or by Indiana Carpenters as a result of any Generic Discount Guarantee. (Request No. 4)

- Documents sufficient to show any and all plan designs of the prescription plans offered by Indiana Carpenters from 2008–2016. (Request No. 5)

31. Before Defendants served the subpoenas included in Exhibit X, Defendants had noticed only two depositions of third parties not connected to the named plaintiffs—Judith Clark, a former pharmacy director of Mississippi Medicaid, and Barbara Mart, who held the same position at Nebraska Medicaid. Attached as Exhibit Y is a true and correct copy of the cover and selected pages of the January 10, 2018 transcript of the deposition of Judith P. Clark. Attached as Exhibit Z is a true and correct copy of the cover and selected pages of the June 29, 2018 transcript of the deposition of Barbara Mart.

32. Attached as Exhibit AA is a true and correct copy of Plaintiffs' Second Set of Interrogatories to Defendant Caremark, L.LC.

33. Attached as Exhibit BB is a true and correct copy of Plaintiffs' Third Set of Interrogatories to Defendant CVS Pharmacy, Inc.

34. Attached as Exhibit CC is a true and correct copy of a July 20, 2018 email from Derek MacKenzie to counsel in these cases.

35. Attached as Exhibit DD is a true and correct copy of the cover pages and pages 7-8 of the Brief of Appellee CVS Pharmacy, Inc. filed in *Corcorcan v. CVS Pharmacy, Inc.*, Appeal No. 17-16996, in the United States Court of Appeals for the Ninth Circuit.

36. Attached as Exhibit EE is a true and correct copy of a July 18, 2018 letter to CVS's counsel from Jeniphr Breckenridge without attachments.

37. Plaintiffs received Caremark's privilege log on June 27, 2018, and will soon be writing Caremark about that log.

37. Attached as Exhibit FF is a true and correct copy of a July 23, 2018 email to me from Grant Geyerman refusing to consent to the relief requested in this Motion. Mr. Geyerman's email was sent after we conferred by telephone earlier this afternoon.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of July, 2018, in Washington, D.C.

_____
Jennifer Fountain Connolly

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of July, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties noted below by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filling as indicated on the Notice of Electronic Filing. Parties may access this filing for viewing and/or downloading through the Court's CM/EDF System.

Robert C. Corrente
Christopher N. Dawson
WHELAN, CORRENTE, KINDER & SIKET LLP
100 Westminster Street; Suite 710
Providence, RI 02903
rcorrente@whelancorrente.com
cdawson@whelancorrente.com

William Burke
Enu Mainigi
Grant A. Geyerman
Kylie Hoover
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, D.C. 20005
wburke@wc.com
emainigi@wc.com
ggeyerman@wc.com
khoover@wc.com

*Counsel for Defendants CVS Pharmacy, Inc.
and Caremark, L.L.C.*

　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Steve W. Berman*
　　　　　　　　　　　　　　　　　　　　　　　　　　　Steve W. Berman