# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND, and INDIANA CARPENTERS WELFARE FUND, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>CVS PHARMACY, INC. and CAREMARK, L.L.C.,<br><br>       Defendants. | Case No. 1:16-cv-00046-S |

**MEMORANDUM IN SUPPORT OF CAREMARK L.L.C.'S MOTION
UNDER THE FEDERAL ARBITRATION ACT TO DISMISS THE CLAIMS OF
<u>SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

BACKGROUND ................................................................................................................................. 1

      A.     Sheet Metal Fails To Comply With Its Dispute-Resolution Agreement Before Commencing Litigation Against Caremark. ................................................. 1

      B.     Sheet Metal Refuses To Comply With Its Dispute-Resolution Agreement. ........... 2

LEGAL STANDARD .......................................................................................................................... 4

ARGUMENT ....................................................................................................................................... 4

      A.     Sheet Metal Must Arbitrate Its Claims Against Caremark. ..................................... 4

      B.     Dismissal Is The Appropriate Remedy. ................................................................... 5

CONCLUSION .................................................................................................................................... 7

i

# **TABLE OF AUTHORITIES**

## **CASES**

*Álvarez-Maurás v. Banco Popular of Puerto Rico*,
919 F.3d 617 (1st Cir. 2019) ......................................................................................4, 5

*Anderson v. Comcast Corp.*,
500 F.3d 66 (1st Cir. 2007) ..............................................................................................4

*Ansari v. Qwest Commc'ns Corp.*,
414 F.3d 1214 (10th Cir. 2005) .......................................................................................6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .........................................................................................................4

*BG Grp., PLC v. Republic of Argentina*,
572 U.S. 25 (2014) ...........................................................................................................4

*Dempsey v. George S. May Int'l Co.*,
933 F. Supp. 72 (D. Mass. 1996) ....................................................................................6

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
748 F.3d 1 (1st Cir. 2014) ................................................................................................5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ...................................................................................................5, 6

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ...........................................................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .............................................................................................................4

*Pinnacle Benefits Grp., LLC v. Am. Republic Ins. Co.*, No. 1:13CV186,
2013 WL 6894878 (M.D.N.C. Dec. 31, 2013) ...............................................................5

*PowerShare, Inc. v. Syntel, Inc.*,
597 F.3d 10 (1st Cir. 2010) ..............................................................................................5

*Snyder v. Smith*, 736 F.2d 409 (7th Cir. 1984) ....................................................................6

*Visionmaster, Inc. v. ASC Int'l*, No. 2:14-CV-224-NT,
2015 WL 401312 (D. Me. Jan. 28, 2015) .......................................................................6

## STATUTES

9 U.S.C. § 2 .......................................................................................................................... 4

9 U.S.C. § 4 .......................................................................................................................... 5

# INTRODUCTION

In its contract for prescription benefit management ("PBM") services, Plaintiff Sheet Metal Workers Local No. 20 Welfare and Benefit Fund ("Sheet Metal") agreed to a dispute-resolution provision that requires Sheet Metal, as a condition precedent to litigation, to (1) give notice of any dispute, (2) designate a dispute-resolution representative, (3) negotiate in good faith to resolve the dispute, and (4) submit to binding arbitration in Cook County, Illinois, if negotiations do not resolve the dispute in 90 days.

Sheet Metal violated this agreement when it filed claims against Defendant Caremark, L.L.C. ("Caremark") in this case. Sheet Metal subsequently compounded its violation by refusing to participate in dispute-resolution negotiations that Caremark requested. Because the parties' dispute was not resolved within 90 days, Sheet Metal was required to submit to arbitration and cannot proceed in this court.

Caremark now moves to dismiss Sheet Metal's claims because they are subject to arbitration in accordance with the dispute-resolution provision. Dismissal, rather than compelling arbitration, is the appropriate remedy under the Federal Arbitration Act ("FAA") because the arbitration must occur in Cook County, Illinois, outside this Court's jurisdiction.

# BACKGROUND

### A. Sheet Metal Fails To Comply With Its Dispute-Resolution Agreement Before Commencing Litigation Against Caremark.

As part of its contractual relationship with Caremark, Sheet Metal agreed not "to commenc[e] any litigation or other legal proceeding" without first following dispute-resolution procedures involving multiple mandatory steps culminating in binding arbitration. Defs.' Objection to Pls.' Motion for Class Certification, Ex. ("DX") 46, Prescription Benefit Services Agreement ¶ 13.16 (Jan. 1, 2015) ("PBSA") (CAREMARKSM_0054155, at 174); *see also* DX

1

40, Pricing Implementation Document (Jan. 1, 2011) (CAREMARKSM_0054105, at 106, 107); DX 49, Template Agreement (2011) (CAREMARKSM_0088642, at 661). The applicable dispute-resolution agreement, which remains in effect, provides (in relevant part):

> **Dispute Resolution.** In the event of a dispute between the parties and *prior to commencing any litigation or other legal proceeding*, each party *shall*, by giving written notice to the other party ("Dispute Notice"), request a meeting of authorized representatives of the parties for the purpose of resolving the dispute. The parties agree that, within ninety (90) days after the issuance of the Dispute Notice, each party *shall* designate a representative to participate in dispute resolution discussions which *will* be held at a mutually acceptable time and place (or by telephone) for the purpose of resolving the dispute. Each party agrees *to negotiate in good faith to resolve the dispute* in a mutually acceptable manner. *If* despite the good faith efforts of the parties, the authorized representatives of the parties are unable to resolve the dispute within ninety (90) days after the issuance of the Dispute Notice, *or if* the parties fail to meet within such ninety (90) day period, *either party may, by written notice to the other party, submit the dispute to binding arbitration in Cook County, Illinois* before a single mutually designated arbitrator in accordance with the commercial arbitration rules of the American Arbitration Association.

PBSA ¶ 13.16 (emphases added); *see also id.* ¶ 13.12.

Sheet Metal did not follow any of these dispute-resolution procedures before it commenced litigation against Caremark by filing its Amended Complaint on May 4, 2018. *See* Am. Compl. (Dkt. No. 81). In the Amended Complaint, Sheet Metal filed six claims against Caremark alleging RICO violations, state consumer protection act violations, negligent misrepresentation, fraud, and unjust enrichment. *See id.* at 51, 64, 78, 81, 82, 83.

**B.** **Sheet Metal Refuses To Comply With Its Dispute-Resolution Agreement.**

In its July 3, 2018 Answer, its first substantive filing in this litigation, Caremark invoked the dispute-resolution procedures as a defense to Sheet Metal's claims: "As a separate and distinct defense, Caremark alleges that putative class members **and at least one Plaintiff** have agreed to, and failed to comply with, dispute resolution procedures for their claims, including but not limited to alternative resolution, binding arbitration, and forum and venue selection. Accordingly, to the extent that claims have been asserted on behalf of a Plaintiff or putative class members who are

2

subject to such dispute resolution procedures, the Complaint and each and every alleged cause of action therein are barred, in whole or in part . . . ." Dkt. No. 90, at 36 (emphasis added). Even after Caremark asserted this defense, Sheet Metal made no effort to comply with the dispute resolution procedures.

Caremark then sent a letter to Sheet Metal demanding compliance with the dispute-resolution agreement and, in accordance with that agreement, "request[ing] a meeting of authorized representatives for the purpose of resolving Sheet Metal's individual claims ('the dispute')." DX 79, Caremark Dispute Resolution Letter, at 1 (Oct. 31, 2018). Caremark designated a "representative to participate in dispute resolution discussions" and expressed its "read[iness] to negotiate in good faith to resolve the dispute in a mutually acceptable manner." *Id.* Caremark asked whom Sheet Metal would designate as its representative, and noted "Caremark's representative looks forward to discussions with Sheet Metal's representative within ninety (90) days at a mutually acceptable time and place (or by telephone) for the purpose of resolving the dispute." *Id.* at 2.

Sheet Metal did not respond until January 22, 2019, just seven days before the end of the ninety-day period. *See* DX 80, Sheet Metal Dispute Resolution Letter (Jan. 22, 2019). In its response, Sheet Metal refused to comply with the dispute-resolution agreement. *See id.*

Caremark replied four days later on January 26, 2019, before the end of the ninety-day dispute resolution period. Caremark reiterated its "willing[ness] to negotiate in good faith to resolve the dispute should Sheet Metal choose to designate a representative to participate in dispute-resolution discussions" by the deadline. DX 81, Caremark Dispute Resolution Letter, at 2 (Jan. 26, 2019). Sheet Metal did not respond and the 90-day dispute resolution period came to an end on January 29, 2019.

## LEGAL STANDARD

The FAA embodies "'a liberal federal policy favoring arbitration agreements'" and "was designed to promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Section 2 of the FAA makes any "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . . *valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of a contract."  9 U.S.C. § 2 (emphasis added).  "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Anderson v. Comcast Corp.*, 500 F.3d 66, 70 (1st Cir. 2007) (quoting *Moses H. Cone*, 460 U.S. at 24–25).  Questions of "arbitrability" are presumptively for courts to decide, but questions "about the meaning and application of particular procedural preconditions for the use of arbitration" are presumptively for arbitrators to decide.  *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014).  Procedural questions for the arbitrator "include the satisfaction of . . . 'conditions precedent to an obligation to arbitrate . . . .'"  *Id.* (quoting *Moses H. Cone*, 490 U.S. at 25, and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)).

## ARGUMENT

### A.   Sheet Metal Must Arbitrate Its Claims Against Caremark.

Under the FAA, Sheet Metal's claims against Caremark are arbitrable because "a valid agreement to arbitrate exists," Caremark "is entitled to invoke the arbitration clause," Sheet Metal "is bound by that clause," and Sheet Metal's "claim[s] asserted come[] within the clause's scope." *Álvarez-Maurás v. Banco Popular of Puerto Rico*, 919 F.3d 617, 623–24 (1st Cir. 2019) (internal quotation marks omitted).

Sheet Metal entered into a valid arbitration agreement as part of its PBSA. *See* PBSA ¶ 13.16. This valid arbitration agreement requires Sheet Metal to "submit the dispute to binding arbitration in Cook County, Illinois before a single mutually designated arbitrator in accordance with the commercial arbitration rules of the American Arbitration Association." *Id.*

All of Sheet Metal's claims against Caremark arise out of its contract, *see, e.g.*, Pls.' Mem. in Support of Motion for Class Certification (Dkt. No. 121.1) at 22–23, and fall within the scope of the arbitration clause because that clause broadly applies "[i]n the event of *a dispute* between the parties," PBSA ¶ 13.16 (emphasis added). "The plain language of th[is] clause covers any dispute that may arise between the parties in the course of their contractual relationship." *Pinnacle Benefits Grp., LLC v. Am. Republic Ins. Co.*, No. 1:13CV186, 2013 WL 6894878, at *4 (M.D.N.C. Dec. 31, 2013) (construing an arbitration agreement providing, in relevant part, "In the event . . . of *a dispute* between the Parties, [the parties] agree that *such dispute* will be resolved by binding arbitration" (emphases and omission in original)). In *Álvarez-Maurás*, the First Circuit held that RICO claims fell "within the expansive ambit" of a similarly worded arbitration agreement applicable to "[a]ll controversies that may arise between the [parties]." 919 F.3d at 623. But even if there were any ambiguity, "'ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'" *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7 (1st Cir. 2014) (alteration in original) (quoting *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)). This "presumption of arbitrability . . . . is particularly appropriate where, as here, the arbitration clause is broadly worded." *Id.* at 8.

Sheet Metal's dispute with Caremark belongs before an arbitrator, not this Court.

**B.  Dismissal Is The Appropriate Remedy.**

The FAA permits a federal court to order an arbitration proceeding only in its own "district" and "in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also Henry Schein, Inc. v.*

5

*Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("We must interpret the Act as written."). When the arbitration agreement requires the arbitration proceeding to occur outside the district where arbitrable claims are pending, these statutory limits prevent the court from itself ordering arbitration. *See, e.g.*, *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005); *Snyder v. Smith,* 736 F.2d 409, 418–20 (7th Cir. 1984), *overruled in part on other grounds, Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998); *Dempsey v. George S. May Int'l Co.*, 933 F. Supp. 72, 75–76 (D. Mass. 1996); *see also Henry Schein*, 139 S. Ct. at 529 ("[T]he Act . . . requires that we interpret the contract as written."). In such circumstances, the court should dismiss the claims, permitting them to be filed in the arbitral forum accordance with the agreement. *See, e.g.*, *Visionmaster, Inc. v. ASC Int'l,* No. 2:14-CV-224-NT, 2015 WL 401312, at *5 (D. Me. Jan. 28, 2015) ("dismiss[ing] rather than stay[ing] because this court cannot compel arbitration in the District of Minnesota, which is the forum specified in the Agreements").

Any arbitration here must occur in Cook County, Illinois, which is outside this Court's district. *See* PBSA ¶ 13.16. Thus, the appropriate remedy is to dismiss Sheet Metal's arbitrable claims—which are all of its claims against Caremark.[1]

---

[1] Transferring the case is another potential remedy. *See, e.g.*, *Dempsey*, 933 F. Supp. at 76 (transferring cases to the Northern District of Illinois for enforcement of an "agreement provid[ing] for arbitration in Illinois"). But this remedy would affect Sheet Metal's entire case, *see id.*, including its claims against Defendant CVS Pharmacy, Inc., to which this Motion does not apply. For that reason, dismissal of Sheet Metal's arbitrable claims against Caremark, leaving pending the claims against CVS, is the more appropriate and efficient remedy.

6

## **CONCLUSION**

For these reasons, Caremark respectfully requests that this Court dismiss Sheet Metal's claims against Caremark.

                                                          Respectfully submitted,

Dated: July 17, 2019                  By: /s/ *Robert C. Corrente*

                                                    Robert C. Corrente
                                                    Whelan, Corrente & Flanders LLP
                                                    100 Westminster Street, Suite 710
                                                    Providence, RI 02903
                                                    Telephone: (401) 270-4500
                                                    Facsimile: (401) 270-3760
                                                    rcorrente@whelancorrente.com

                                                    Enu Mainigi (*Pro Hac Vice*)
                                                    Craig D. Singer (*Pro Hac Vice*)
                                                    William T. Burke (*Pro Hac Vice*)
                                                    Grant A. Geyerman (*Pro Hac Vice*)
                                                    Jariel A. Rendell (*Pro Hac Vice*)
                                                    Williams & Connolly LLP
                                                    725 Twelfth St., N.W.
                                                    Washington, DC 20005
                                                    Telephone: (202) 434-5000
                                                    Facsimile: (202) 434-5029
                                                    emainigi@wc.com
                                                    csinger@wc.com
                                                    wburke@wc.com
                                                    ggeyerman@wc.com
                                                    jrendell@wc.com

                                                   *Attorneys for Defendants*